# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

J. H. Hillman and J. J. Gray, trading as J. H. Hillman & Co., *v.* Joseph Joseph and Samuel Joseph, trading as Joseph Joseph & Brothers, Appellants.

*Contract—Commissions of broker—Construction of written agreement—Province of court.*

Where by the request of a broker the arrangement, between him and the vendor of certain rails, for commissions on a sale affected by said broker, is reduced to writing, the construction of such writing is a question for the court and not for the jury; and, where this writing provides that the commissions should become due and payable when the goods are "shipped, accepted and paid for" such conditions are precedent to the right of the plaintiff to demand the commission or compensation for bringing about the sale.

Argued April 13, 1898. Appeal, No. 131, April T., 1898, by defendants, from judgment of C. P. No. 2, Allegheny Co., April T., 1896, No. 118, on verdict for plaintiffs. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed. RICE, P. J., and SMITH, J., dissent.

Foreign attachment in assumpsit. Before WHITE, P. J.

This action was brought to recover commissions alleged to be due the plaintiffs from the defendants on a sale of 800 tons

steel rails which sale was affected by the plaintiffs as brokers.
The contract of sale called for the payment of $2,000 to be ap-
plied on the last payment of the rails, but that if purchaser
failed to take and pay for said rails, or any part of same, when
shipped, said $2,000 was to belong absolutely to the defendants
as consideration for entering into the contract.   The commis-
sions claimed were $1,320.   The purchaser of the rails failed
to accept them and the defendants were compelled to sell them
for a price which, as testified, was less than the $2,000 deposited
by the purchaser to sustain the contract.   There was evidence
on the part of plaintiffs that defendants made an oral agree-
ment with plaintiffs by telephone that the latter should have
as commissions all they could get for the rails above $21.25 a
ton; that nothing was said in this conversation as to the time
of payment and that upon these terms they rendered their ser-
vices.   There was no dispute that the brokers had affected
the sale.   After the sale had been affected and the $2,000 de-
posited, plaintiffs wrote the defendants advising them of a
promise "to send us a note showing that we were entitled for
our commissions and services the difference between $21.25,
the price given us by you to sell the rails, and the price sold at
$22.90, which is $1.65 per ton.   Also that this would be paid
to us on each shipment after you had received the money for
same.   Will you please do this as we would like to have a rec-
ord on our books of this transaction."   To this letter defend-
ants replied, "We are in receipt of yours of the 18th inst. and
carefully note the contents.   We know all about the contract
which we have made with you, and we will live up to it in all
respects.   As soon as the rails are shipped, accepted, and paid
for, you will get the difference between $21.25 a ton and $22.90.
Understand, whenever we do business, it is strictly on business
principles."

Verdict and judgment for plaintiffs for $600.   Defendants
appealed. .

*Errors assigned* were (1) refusal of binding instructions for
defendants.   (2) In the oral charge as follows: "Now, the
question of fact to be submitted to the jury, is this: Was there
an agreement between these parties that, unless Menschke re-
ceived and paid for these rails, the plaintiffs were to get no

commission at all. That is the question I leave to you. The letter of the defendants of the 20th of September is not conclusive on that point. It says, 'As soon as the rails are shipped, accepted and paid for you will get the difference between $21.25 and $22.90.' Now, the question is whether that means that the payment was to be deferred until that time, or whether it meant that the plaintiffs should receive nothing, unless Menschke received and paid for these rails."

*Josiah Cohen* and *A. Israel*, for appellants.—Our contention is, first, that the construction of these letters was for the court. Second, that when properly construed, they clearly show a contract between plaintiffs and defendants, that the former were to receive commissions only in the event that Menschke accepted and paid for the rails. It is undisputed that Menschke neither accepted nor paid for the rails, but they were left upon defendants' hands.

The condition precedent to plaintiffs' right to recover the commissions never was fulfilled, hence they were not entitled to recover, and the court should have affirmed defendants' point that, "under all the evidence, the verdict should be for defendants." Its refusal so to do, we claim, was error, as was also that part of the charge, as follows : " The letter of the defendants of September 20 is not conclusive on that point."

*M. A. Woodward*, with him *W. G. Guiler*, for appellees.— There can be no question of the law governing the case, to wit: that a broker, having brought the parties together, in an agreement for purchase and sale, has discharged his duty and earned his commissions.

The contract in this case, under which plaintiffs were entitled to recover their commissions, was wholly made and concluded between Mr. Hillman of the plaintiffs, at his office in Pittsburg, and Mr. Joseph Joseph, at his office in Cincinnati, by telephone. Whatever occurred afterwards, were services of assistance to the parties in the drawing and execution of the contract between them.

OPINION BY W. W. PORTER, J., November 21, 1898 :

The plaintiffs are brokers in rails and railroad supplies. In their amended statement of claim, their demand is "for services

.rendered the said defendants as brokers under a certain contract made by and between the said plaintiffs and the said defendants for the sale by the said plaintiffs for the said defendants and at their instance and request $8,000 of relaying rails to Henry Menschke on or about September 14, 1895."

The testimony taken in the court below indicates that there was communication between the plaintiffs and defendants by wire and by conversation respecting the contract and the commission to be paid to the plaintiffs. The former was concluded formally, the latter culminated in correspondence. A letter was sent by the plaintiffs to the defendants dated at Pittsburg, September 18, 1895, in which they say, inter alia, "when Mr. Leonard Joseph was here he said, you would send us a note showing that we were entitled for our commissions and services the difference between $21.25, the price given us by you to sell the rails, and the price sold at $22.90 which is $1.65 per ton. Also that this would be paid to us on each shipment after you had received the money for same. Will you please do this as we would like to have a record on our books of this transaction."

To this, the defendants on September 20, 1895, in a letter dated at Cincinnati, replied : " We are in receipt of yours of the 18th inst. and carefully note the contents. We know all about the contract which we have made with you, and we will live up to it in all respects. As soon as the rails are shipped, accepted, and paid for, you will get the difference between $21.25 a ton and $22.90. Understand, whenever we do business, it is strictly on business principles. As to the pass for Mr. Zinn, the B. & O. S. W. is out of them," etc. To this the plaintiffs replied in writing, dated at Pittsburg, September 21, 1895: " Your favor of the 20th to hand, which is all O. K. Mr. Zinn was in this morning just before we received your letter," etc.

It will thus be seen that the plaintiffs requested that the agreement between them and the defendants respecting the commission should be put in writing; that the defendants acquiesced by putting the terms in writing; that the plaintiffs replied in writing, acquiescing in the terms as stated. It is true that the plaintiff said, in one part of his testimony that his right to commission was fixed by telephone before the ex-

change of the above letters, but he is contradictory in his statements, and the testimony indicates that the purchaser and seller were not finally brought together until a written engagement was entered into between them some days subsequent to the alleged telephonic conversation. It was at the time of the execution of this document that the terms of the agreement for the payment of commissions were arrived at, as the letter of September 18, 1895, indubitably proves. Furthermore, any negotiations or suggestions that may have preceded the correspondence above quoted must be held to be merged into the contract reduced to writing by the correspondence of the parties above set forth.

The contract being thus in writing, its interpretation was for the court and not for the jury. The proof was clear that the purchaser of the rails did not comply with his contract. No rails were "shipped, accepted, or paid for" by the purchaser. Such shipment, acceptance, and payment were by the agreements of the parties, made a condition precedent to the right of the plaintiffs to demand the commission or compensation for bringing about the sale.

The learned judge of the court below left it to the jury to determine whether the contract meant that the payment of the commission was simply to be deferred until shipment, acceptance, and payment, or that the shipment, acceptance, and payment were to constitute a condition precedent to a recovery. In this we think there was error. The interpretation of the writings was not for the jury. We are of opinion that the commission was payable only on the performance of his contract by the purchaser of the rails. The proofs show failure on the part of the purchaser to perform his contract. The plaintiffs had, therefore, no right to demand the payment of any commission. This being the true interpretation of the written contract, the court below should have directed a verdict for the defendants.

The judgment is therefore reversed at the cost of the appellees.

RICE, P. J., and SMITH, J., dissenting:

The defendants were dealers in rails and railways supplies and the plaintiffs were brokers. The latter procured for the

former a purchaser of 800 tons of rails at $22.90 per ton. The contract between the defendants and Menschke, the purchaser, was reduced to writing and duly executed on September 14, 1895, and contained the following provision:

"These rails are to be shipped within thirty days from above date, at such time within the thirty days as Mr. Menschke shall direct, and to be paid for in cash vs. bill lading. Said Henry Menschke agrees to pay to Joseph Joseph & Bros., on account of said purchase, on the 14th day of September, $2,000 to apply on the last payment of the rails. But if said Henry Menschke fails to take and pay for said rails, or any part of said rails when shipped, said $2,000 is to belong absolutely to Joseph Joseph & Bros., as a consideration for entering into this contract, and all the rails are to be the property of said Joseph Joseph & Bros., until purchase price is paid by said Henry Menschke within time specified above. The said rails are to be subject to the inspection of the agent of said Henry Menschke, and said Henry Menschke agrees to have such inspection made on or before September 21st, 1895, where they lie at Cincinnati, and on the Big Four R. R."

Menschke paid the $2,000, but subsequently refused to accept the rails and to make the other payments. The defendants resold the rails and assert that their loss was not more than covered by the $2,000 forfeit money paid them at the time of the execution of the contract. That, however, is not very material here. There is no room for dispute that the plaintiffs' services were the efficient cause of the bargain. They procured the customer, the defendants accepted him as a purchaser, and undertook to execute his order, and upon all the authorities the plaintiffs had then earned their commissions and were entitled to demand them unless there was an agreement that they should not be paid until the goods were delivered and paid for: Restein v. McCadden, 166 Pa. 340. Was there such an agreement? This, we submit with all due respect to the opinion of our brethren, was a question for the jury and was to be determined upon a consideration of all of the evidence, both oral and written and not solely upon a legal interpretation of the letters written after the contract between the plaintiffs and the defendants had been performed. The plaintiffs contended, and gave evidence, which, if believed, would sustain a finding,

that prior to the conversation referred to in the plaintiffs' letter
of September 18th, the defendants made an oral agreement
with the plaintiffs by telephone that the latter should have as
commissions all that they could get for the rails above $21.25
a ton; that nothing was said in this conversation as to the time
of payment, and that upon these terms they rendered the ser-
vice.   If this be true they had earned the commissions when
they had procured the purchaser; the defendant's liability then
accrued, and was not conditioned upon the acceptance of the
rails and payment of the price by Menschke.   The correspond-
ence, then, related to a completed transaction, a contract per-
formed, and is to be interpreted in the light of that fact.   Thus
viewed, a reasonable interpretation of the plaintiffs' letter of
September 18th, is that Leonard Joseph promised in the con-
versation referred to to put in writing the bargain previously
made, and also promised that the commission thus agreed upon
would be paid as each shipment was made and paid for; but
the latter was no part of the original agreement.   The defend-
ant's letter in reply conceded that there was a contract, and
then reiterated the promise alleged to have been made by Leon-
ard Joseph.   We do not assert that the letters will not bear
a construction corroborative of the defendant's parol testimony
that in the original employment of the plaintiffs the payment
of the commissions was conditioned upon the acceptance of and
payment for the rails by Menschke,—although it is a signifi-
cant fact that the plaintiffs' testimony as to the first conver-
sation over the telephone wire is not explicitly denied—but we
do contend that it was not for the court to say that the letters
were conclusive upon that question.   It seems to us that the
case was within the rule thus stated by the present Chief Jus-
tice in Home B. & L. Asso. v. Kilpatrick, 140 Pa. 405, "When
matters of fact, depending on oral testimony, are connected
with and necessary to a proper understanding of the written
evidence, the court is not bound to construe the latter as though
it stood alone.   An admixture of oral and written evidence
draws the whole to the jury:" Denison v. Wertz, 7 S. & R.
372; Sidwell v. Evans, 1 P. & W. 383; McGee v. Northumber-
land Bank, 5 W. 32. · For these reasons we would overrule the
assignments of error and affirm the judgment.