# Boon & Hill Company *v.* Prudential Trust Company, Appellant.

*Assignment for the benefit of creditors—Contract of assignee—Additional liability of assignee—Evidence.*

1. In an action against the assignees for the benefit of creditors of a contractor to hold them personally liable•for labor and material furnished in completing a building operation, a verdict and judgment for the plaintiff will be sustained where the evidence for the plaintiffs, although contradicted, tends to show that in giving the order for the labor and material nothing was said by the defendants as to their contracting in their representative capacity only, and that the plaintiffs understood that they were dealing with the defendants in their individual capacity.

2. Assignees for the benefit of creditors are of the class of trustees who are personally liable on their contracts.

3. Where there is evidence partly written and partly oral that the assignees for the benefit of creditors made a contract in their representative, and not their individual, capacity, such evidence is for the jury,

and the court cannot say as a matter of law that the contract was only binding upon the assignees in their representative capacity.

4. When matters of fact, depending on oral testimony, are connected with and necessary to a proper understanding of the written evidence, the court is not bound to construe the latter as though it stood alone, and an admixture of oral and written evidence draws the whole to the jury.

Argued April 15, 1908.   Appeal, No. 45, April T., 1908, by defendants, from judgment of C. P. No. 1, Allegheny Co., June T., 1903, No. 697, on verdict for plaintiff in case of The Boon & Hill Company v. Prudential Trust Company and J. B. Flint.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and BEAVER, JJ.   Reversed.

Assumpsit to recover for labor and material furnished to a building operation.

Defendants presented the following points:

1. As to the first three houses referred to in the statement of claim, there is no evidence of guaranty or promise of payment which would render the defendants liable personally.   *Answer:* We answer that this way: There is no evidence of guaranty in the strict legal signification of guaranty, but there is evidence from which you may or may not find an agreement by the defendants to pay the plaintiff.   If you find that there was an agreement by the defendants to pay the plaintiff, the plaintiff would be entitled to a verdict not only for the three houses but all four.   Otherwise your verdict would be for defendants.   In other words, if you find from the weight of the evidence that the defendants contracted with the plaintiff for papering the houses, the plaintiff is entitled to a verdict.   On the other hand, if the defendants had nothing to do with the contract for the papering and so told young Mr. Hill, who was representing the plaintiff in endeavoring to secure the contract and referred him to Mr. Beeckman, and Mr. Beeckman met young Mr. Hill with full knowledge on Hill's part that it was a contract with Beeckman in behalf of the owners of the property, the plaintiff could not recover and your verdict would be for defendants. [1]

2. As to the fourth house, the defendants are not liable personally under the written paper "exhibit 2," because:

a. Said guaranty was signed and made by defendants as assignees.

b. The Prudential Trust Company, one of the defendants, is a corporation organized under the act of assembly of 1889, and as such had no authority under the law to become guarantor, and such contract of guaranty is ultra vires and void.

c. The contract of guaranty by these defendants, being a joint one, and being void as to the Prudential Trust Company, one of the defendants, plaintiff cannot recover against J. B. Flint, the other defendant.

d. The action is brought against defendants in their individual capacity, and J. B. Flint, one of the assignees, would, as such assignee, have no power to bind his coassignee individually as a guarantor.

We answer that point this way: In this charge to you we eliminate from your consideration the question of guaranty in its technical sense, and leave to you solely for consideration the question whether there was or was not an original contractual undertaking between the defendants and plaintiff for the papering of the four houses. If there was such contract, the plaintiff is entitled to recover. If there was no such contract, in other words, if the contract was not made with these assignees but with Mr. Beeckman as representative of the owners and Mr. Hill knew that fact, then your verdict should be for the defendants. [2]

4. It being the position of the plaintiff that the contract was with the defendants as assignees, and any promise to pay was made as assignees, this action against the defendants as individuals cannot be sustained, and the verdict must be for the defendants. *Answer:* Refused. [3]

5. Under the pleadings and evidence, the verdict must be for the defendants. [4]

The court charged in part as follows:

[On the other hand, if the contract that Mr. Beeckman made failed to disclose that he was making it for the owners of the property, then he was making it for the Prudential Trust Company and Mr. Flint, and for this reason the Prudential Trust

Company and Mr. Flint were the assignees of this unfinished work and other property that passed to them, and as assignees they undertook to complete the work.  That work included the papering, because the specifications say that the papering, which is to be done to the satisfaction of the owner, is not to cost over $200, but these contractors agreed to do that papering, to be responsible for finishing it in a way satisfactory to the owner, and the papering must not cost over $200.  So that the papering was part of the work which these assignees had in their hands.  Young Mr. Hill says when he was endeavoring to get the work that he went to see Mr. Flint, who was one of the assignees.  Remembering that the whole unfinished work was in the hands of the assignees and they were doing that, Mr. Flint says, "That part of the work is in the hands of Mr. Beeckman; you see him, and if you make it satisfactory to him, or it is satisfactory to him, it will be to us," or to me, or whatever the expression was.  If that was all that was said, Mr. Hill had the right to assume that in referring him to Mr. Beeckman he was being referred to an agent who had authority to speak, and in the absence of a clear statement to him that the situation was otherwise, Mr. Hill had the right to assume that Mr. Beeckman was the agent of Mr. Flint, who was the active assignee in doing this work, and therefore the two defendants would be responsible for the work contracted for.] [5]

[Young Mr. Hill says he got a contract for nine houses, and the dispute here is as to who should pay for the work that was done, whether these defendants should pay for it.  They ought to pay for it if young Mr. Hill got the contract without any knowledge, either from Mr. Flint, or Mr. Beeckman, that the work was being ordered for some person other than the assignees.] [6]

Verdict and judgment for plaintiff for $1,002.  Defendants appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*George R. Wallace,* for appellants.—The defendants were not personally liable: Gillespie v. Blair Glass Co., 189 Pa. 50;

Schmidt v. Gayner, 59 Minn. 303 (61 N. W. Repr. 333); Sager Mfg. Co. v. Smith, 45 N. Y. App. Div. 358; Nason Mfg. Co. v. Garden, 52 N. Y. App. Div. 363; Farmers' Loan & Trust Co. v. R. R. Co., 2 McCrary, 181; Davis v. Duncan, 19 Fed. Repr. 477; Walsh v. Raymond, 58 Conn. 251 (20 Atl. Repr. 464); Camp v. Barney, 4 Hun (N. Y.), 373; McCan v. O'Ferrall, West H. L. 593; Edrington v. Pridham, 65 Tex. 616; Bodkin v. Merit, 102 Ind. 293 (1 N. E. Repr. 625); Stelzer v. LaRose, 79 Ind. 435; Emeigh's Case, 26 Pa. C. C. Rep. 253; Vermont, etc., R. R. Co. v. Vermont Cent. R. R. Co., 46 Vt. 792.

*R. A. Balph*, with him *Jas. Balph*, for appellee.—Trustees of all kinds are liable personally for all contracts made with them in the course of the administration of the estate committed to them, unless such trustees specially stipulate in the contract against such liability, and the creditor must look to the trust funds for payment: Grier v. Huston, 8 S. & R. 401; Seip v. Drach, 14 Pa. 352: Woodward's App., 38 Pa. 322; Tassey v. Church, 4 W. & S. 346; Patterson v. McCarthy, 1 Penny. 491; Schmittler v. Simon, 101 N. Y. 554 (5 N. E. Repr. 452); Willis v. Sharp, 113 N. Y. 586 (21 N. E. Repr. 705); Davis v. Stover, 16 Abbott (N. S.), 225; Ryan v. Rand, 20 Abbott, N. C. 313; Rogers v. Wendall, 54 Hun, 540; New v. Nicoll, 73 N. Y. 127.

OPINION BY RICE, P. J., April 12, 1909:

The following excerpt from the charge of the learned court below will show in a general way how the case arose and one of the questions for decision: "This suit against the Prudential Trust Company and Mr. Flint, assignees of the Pittsburg Construction Company, arises in this way: The Pittsburg Construction Company and West & Wilson, who were building contractors, contracted for the erection of five houses on Homewood avenue, and four houses on Irwin avenue, in the city of Pittsburg. West & Wilson and the Pittsburg Construction Company proceeded with the work, but finally became insolvent, and the assets, this work, passed over to the assignees, who are defendants in this action. It is not disputed that these assignees went ahead to complete the work and finish the

houses; that is admitted. In the completion of the houses the Boon & Hill Company did some papering, and the question for you to determine is, whether the contract with the Boon & Hill Company was a contract made with these two defendants, the Prudential Trust Company and Mr. Flint, or was a contract made with the owners, Mr. Wright and Mr. Budd, it being alleged that Mr. Beeckman was the agent of the owners."

Mr. Flint, one of the defendants, testified when called for cross-examination, that he was the active manager in the completion of the houses and that what he did in that matter was with the knowledge, consent and authority of his coassignee, the other defendant in the case—that he was acting for him. The testimony of George H. Hill, who represented the plaintiff, was to the effect that he went to see Mr. Flint in regard to getting the contract for papering the houses, that Mr. Flint referred him to Mr. Beeckman as the person who had that part of the work in charge, and said that if it was satisfactory to Mr. Beeckman it would be satisfactory to him. He further testified that he called upon Mr. Beeckman, telling him he had been sent by Mr. Flint, and that after some delay Mr. Beeckman came to the plaintiff's place of business, when this occurred according to the testimony of the witness which we quote: "He selected— I showed him different grades of paper for the different rooms in the different houses, and he said as we were decorators we knew more about it than he did, and to do it." After the paper was selected the plaintiff proceeded with the work and completed the three houses. There was other evidence tending to sustain the plaintiff's contention that Mr. Beeckman was held out by Mr. Flint as the defendants' agent, with authority to act for them in the matter, and tending also to show that the defendants knew of and acquiesced in, or at least did not dissent from, what had been done. On the other hand, the defendants contended on the trial and gave evidence tending to show, that Mr. Beeckman was not their agent but the agent of the owners of the buildings and that it was as such agent that he was referred to in the conversation between Mr. Flint and Mr. Hill. In brief, the question whether the plaintiff did the work upon the order of Mr. Beeckman as agent for the owners

or upon the faith of the defendants holding him out as having authority to act for them, depended upon conflicting testimony and the inferences to be drawn therefrom and was determined in favor of the plaintiff's contention by the jury to whom it was clearly and impartially submitted by the court.

But it is claimed that although the plaintiff did the work under the order of the defendants, and not the order of the owners, the contract implied therefrom must be deemed a contract in their representative capacity only, and therefore they incurred no personal liability. In support of this contention the defendants put in evidence an order of the common pleas, made upon their application, authorizing them to prosecute the work of completing the buildings, to purchase materials and employ labor in connection therewith and to carry on the business of the Pittsburg Construction and Manufacturing Company, so far as might be necessary, for the purpose of completing its contracts. We shall not undertake to determine whether or not this order of the court will enable the defendants to obtain reimbursement in the settlement of their account for expenses they incurred in carrying out the contracts of the assignor. Even if the doctrine enunciated in Gillespie v. Blair Glass Co., 189 Pa. 50, that a chancellor will seek to protect one acting in strict compliance with his orders from loss, will be applicable and will aid the defendants in the settlement of their administration of the trust, it does not necessarily follow that they incurred no personal liability to the plaintiff. For, it is to be noticed, there is no evidence, so far as the first three houses are concerned, that the above order of court was known to the plaintiff or was mentioned in the negotiations, or that anything was said by the defendants as to their contracting in their representative capacity only. It is not uncommon for an agent or a trustee to bind himself personally, looking to the principal or the trust estate for indemnity, and judging the contract, which the jury in this case found was made, by what was said by the parties, it is proper to speak of it as the personal contract of the defendants. Their learned counsel concedes that, generally speaking, fiduciaries who are not officers and agents of the court, such as trustees by deed or will and ex-

ecutors, are personally liable upon their contracts, but contends that those who are officers or agents of the court, such as receivers and trustees in bankruptcy, and who act under and within an express order of the court, are protected from personal liability. Granting the correctness of this distinction, we are constrained to the conclusion, that irrespective of the Act of June 4, 1901, P. L. 404 (which according to the ruling in Potts v. Smith Manufacturing Company, 25 Pa. Superior Ct. 206, cannot affect the question), an assignee for the benefit of creditors is a trustee of the former and not of the latter class, and that the contract in question, so far as it relates to the first three houses, is governed by the principles enunciated in Grier v. Huston, 8 S. & R. 401, and other cases of the same class cited in the brief of the appellee's counsel. We refer in addition to Fehlinger v. Wood, 134 Pa. 517, 521, 522, and the authorities there cited.

With regard to the fourth house a different question is presented. It is alleged in the plaintiff's statement of claim, that when the papering of the fourth house was partly completed, the defendants not having paid plaintiff anything on account of the papering of the three houses then completed, the plaintiff refused to proceed further with the work on the fourth house until the defendants paid for the work already done or gave plaintiff some evidence in writing of defendants' liability therefor; that thereupon the defendants gave the plaintiff the following writing and that thereupon the plaintiff completed the papering of the fourth house. The paper reads as follows:

"PITTSBURG, PA., Nov. 28, 1902.

"This is to certify that we guarantee the payment of the papering the lower house on Irwin avenue to Boon and Hill. This being the house they are now working at nearest to Forbes street. C. Budd being the owner. Contract price $200.00.

"PRUDENTIAL TRUST CO.,

"J. B. FLINT,

"Assignees.

"Per J. B. Flint."

In connection with the foregoing should be noticed the testi-

mony of Mr. Flint that Mr. Hill and his father came to see him and, quoting his words, "I told them if they would go and finish it—they had already started it—we, as assignees, would guarantee the payment of this one fourth house." Mr. Beeckman also testified that they (meaning Mr. Hill and his son) said "we would have to get the assignees to agree to the payment themselves or guarantee the payment of this bill for this last house." He further testified that Mr. Flint and the president of the trust company "agreed as assignees of the Pittsburg Construction Company to pay these bills, to pay the bill for that last. house." Likewise the testimony of Mr. Hill himself is entirely reconcilable with the theory that, particularly as to the fourth house, he looked to the assignees, as such, for payment. It is not for us to put an interpretation on the language of the witnesses. The evidence relating to the fourth house being partly in writing and partly oral was for the jury. "When matters of fact, depending on oral testimony, are connected with and necessary to a proper understanding of the written evidence, the court is not bound to construe the latter as though it stood alone. An admixture of oral and written evidence draws the whole to the jury:" Home B. & L. Assn. v. Kilpatrick, 140 Pa. 405; Sidwell v. Evans, 1 P. & W. 383; Chicago Cottage Organ Co. v. McManigal, 8 Pa. Superior Ct. 632; Hillman & Co. v. Joseph, 9 Pa. Superior Ct. 1; Wetherill v. Erwin, 12 Pa. Superior Ct. 259. It was for them to determine what was the intention of the parties at the time plaintiff refused to go on under what it claimed to be the original contract and insisted upon a new arrangement. But, under the instruction of the learned judge they were not at liberty to find, as we think a jury might have found, that the parties viewed the contract as one with the defendants in their representative capacity only, and did not intend that the defendants should be bound personally and absolutely for the cost of papering the fourth house.

The conclusion we have reached is, that so far as the first three houses are concerned the court was right in its construction of the contract which the jury found was made, but that as to the fourth house the question whether the defendants bound themselves personally was for the jury under appropri-

ate instructions by the court.  The result is that the judgment must be reversed and the cause be sent back for retrial unless the plaintiff elects to remit that part of the judgment which covers the claim for papering the fourth house.

It is therefore ordered that the judgment be reversed and the record be remitted with an order awarding a venire facias de novo, unless the plaintiff, within twenty days from this date, shall file in the office of the prothonotary of this court a paper remitting one-fourth (less $5.90) of the amount of the judgment, but that if such paper shall be filed within the prescribed time the prothonotary shall mark the judgment affirmed for the reduced amount.