## Baum *v.* Goldblatt, Appellant.

*Real estate—Real estate broker—Commissions.*

A real estate broker who, under a written contract, was to receive a commission for the sale of real estate "at the date of passing title" is not entitled to the same, where the sale was never completed because of the failure of the vendee to comply with the terms of the contract of sale, and his inability to meet its requirements.

Argued November 13, 1922. Appeal, No. 80, Oct. T., 1922, by defendant, from judgment of C. P. Berks County, Dec. T., 1920, No. 119, on verdict of plaintiff in the case of Joseph L. Baum v. Louis Goldblatt. Before

234        BAUM *v.* GOLDBLATT, Appellant.

PORTER, HENDERSON, TREXLER, KELLER, LINN and GAW-
THROP, JJ.   Reversed.

Assumpsit for commissions on the sale of real estate.
Before BARNETT, P. J., 41st Judicial District, specially
presiding.

The facts are stated in the opinion of the Superior
Court.

The court directed a verdict in favor of the plaintiff in
the sum of $526.83 and judgment was entered thereon.
Defendant appealed.

*Error assigned,* among others, was refusal of defend-
ant's motion for judgment non obstante veredicto.

*C. H. Ruhl,* for appellant.—The commissions were to
be paid when the title passed, and when the sale was not
consummated the plaintiff could not recover: Hillman
& Co. v. Joseph & Bros., 9 Pa. Superior Ct. 1; Miller et
al. v. Hayes & McCrea, 71 Pa. Superior Ct. 523; Parmly
v. Head, 33 Ill. App. 134.

*Dwight B. Lowrey,* for appellee, filed no printed brief.

OPINION BY PORTER, J., July 12, 1923:

The plaintiff brought this action of assumpsit to re-
cover commissions alleged to have been earned in a sale
of real estate of the defendant. · The court below, upon
the conclusion of the evidence at the trial, instructed the
jury to find a verdict in favor of the plaintiff, and, judg-
ment having been entered upon that verdict, the defend-
ant appeals.

The learned judge who tried the cause held that the
facts brought it within the principle that a real estate
broker has earned his commission when he procures a
purchaser with whom his principal is satisfied, and who
actually contracts in writing for the property at a price
satisfactory to the owner.   When the employment of a

broker is merely to secure a purchaser at a fixed price, to be paid upon terms specified, without any covenant as to when and the conditions under which his compensation is to be paid, he is entitled to his commissions when he procures a purchaser satisfactory to the principal and with whom the latter actually contracts. There can, however, be no question that it is entirely competent for a broker and his client to enter into covenants rendering the payment of any commissions subject to conditions, postponing the time of payment until the title of the property has actually passed and the purchase money paid, or, on the other hand, entitling the broker to commissions although the sale may have been made by the principal during the period covered by the broker's employment: Hillman & Co. v. Joseph & Bros., 9 Pa. Superior Ct. 1; Miller v. Hays & McCrea, 71 Pa. Superior Ct. 523. The contracts between these parties were in writing and the construction thereof was for the court. The first contract, dated April 5, 1920, was much more than a mere contract of employment of the plaintiff as a broker. That contract, with due legal precision, granted to this plaintiff, his heirs and assigns, in consideration of the sum of $100 then paid, an option of the right to purchase, on or before May 8, 1920, the real estate in question (specifically described), for the sum of $25,500, to be paid $1,000 upon the signing of the contract of sale; subject to a first mortgage of $8,000 at 5%, and the balance to be paid all cash at the time of the delivery of the deed within 60 days from the election of the plaintiff to purchase. The defendant covenanted, upon the election of the plaintiff to purchase said real estate, to convey the same to "him, his heirs or assigns," within 60 days thereafter, on payment by the plaintiff, "or his assigns," of the consideration named, less the amount of said option money. In addition to the covenants which gave to the plaintiff his heirs and assigns the unquestionable right to purchase the property at the price specified, the contract contained the following covenant, viz: "The subscriber

hereto hereby agrees to pay to Joseph L. Baum a commission of 2% on the total amount of the sale of this property when and if the same is consummated for the price or sum of $25,500," and here follows a recital of the manner in which the purchase money is to be paid.

When was the commission to be paid under the provisions of the covenant last above quoted? In order to ascertain the meaning of any covenant in a contract due consideration must be given to all the covenants of the contract and the subject-matter with regard to which the parties dealt. This contract gave to the plaintiff and to any party to whom he might assign it the right, on or before May 8, 1920, to exercise the option, by proper writing, and there would have been created a valid contract, binding upon both parties and capable of being specifically enforced by appropriate proceedings: Miller v. Hays & McCrea, supra. But, while both parties would have been bound, the transaction would not have been consummated, that is, finished, for the plaintiff would still have been required to comply with the terms of his option and pay the purchase money. The contract deprived the defendant of any right to pass upon the responsibility of the purchaser, that right became vested in the plaintiff. The plaintiff might have sold his option to any person who thought the property was worth more than the consideration mentioned in the contract and the money so realized from the sale of the option would have been the property of this plaintiff. All that the defendant could get out of the transaction was $25,500, less the $100 which he had received as the consideration for the option. In view of these peculiar provisions of the contract we are of opinion that the covenant of the defendant to pay commissions on the sale of the property "when and if the same is consummated," should be construed to mean that he would pay the commissions when the terms of the option were complied with, the purchase money paid and it became his duty to convey the prop-

erty. That the parties themselves so construed the contract appears from what they subsequently did.

The plaintiff, on April 13, 1920, assigned all his right, title and interest in the option to Nolan and two other parties. Neither the assignees of the option nor this plaintiff at any time accepted the option or became bound, as purchasers, of the property. The defendant, prior to the expiration of the option, by writing, extended it for four days, that is until May 12, 1920. There might be a question whether the agreement of the defendant to pay a commission passed with the assignment of the agreement by Baum to the assignees, Nolan and his associates, or was an independent covenant which still retained to Baum the right to a commission in case a sale was consummated. That question it is not necessary to consider in view of the subsequent action of the parties. That the assignment of the agreement to Nolan did not constitute a sale and that the latter had no intention of buying appears from the testimony of Nolan, who was called by the plaintiff as a witness. He testified that Baum wanted them to enter into an agreement for the sale of the property, which they refused to do; that he then asked them if they would pay $100 and take his assignment, he (Baum) alleging that he could dispose of it within a few weeks, and they paid him $100 for the assignment. The option, as extended, expired on May 12, 1920, and upon that day the defendant was called to the office of the plaintiff and there entered into a written agreement with one Paul M. Wentzel for the sale of the property in question for the sum of $25,400, the deed to be delivered on or before the first day of October, 1920; $900 of the purchase money was to be paid on the execution of this agreement, which was done, and the balance on delivery of the deed. This plaintiff was one of the subscribing witnesses to the agreement last mentioned. The defendant at the same time and, as expressly averred in plaintiff's statement of claim, "as part of the same transaction, sale and purchase then and there effected"

signed a written agreement agreeing to pay to Joseph L. Baum a commission of $510 in full for all services as broker and agent in the sale of the property, "at the date of passing title." Now, the date of passing title was on or before October 1, 1920. Whenever the title was passed then, under the terms of this final agreement between the plaintiff and the defendant, the commission was to be paid. The plaintiff called Wentzel as a witness and his testimony disclosed that he was only a clerk in the employ of one of the parties to whom the plaintiff had as-assigned the option. His cross-examination clearly established that he was not financially responsible; that he had not at any time been able to carry out the contract; that the defendant had asked him time and again to carry out the contract and take title; that he had told defendant he could not do so and that he was not now able to carry out the contract. The testimony of Wentzel and that of Nolan, both of whom were called by the plaintiff, who were uncontradicted, clearly disclosed that Wentzel was simply a man of straw. Neither the plaintiff nor the assignees of the option having elected to become purchasers, the man Wentzel was produced at the office of the plaintiff on the day the option expired and he was presented to defendant as the man who was to become the purchaser. The contract into which it was proposed that the defendant enter differed from that contained in the option agreement, in that it extended the time when much the greater part of the purchase money was to be paid, the option agreement required it to be paid within sixty days, but the agreement between the defendant and Wentzel postponed it for almost five months. The defendant would have been within his rights had he refused to execute the agreement with Wentzel and this being so it was entirely competent for him to enter into this new agreement with Baum positively fixing the condition upon which the commission should become payable. This was done and the payment of the commission was made dependent upon the passing of the title. Had

there been anything in the evidence which would have warranted a finding that the failure to pass the title was the fault of the defendant, the case might have been for the jury. The uncontradicted testimony being that this defendant was and always had been ready and willing to convey to Wentzel upon payment of the purchase money, and that Wentzel was not financially responsible and had refused to comply with his contract and could not do so in fact, the commissions never have become payable. The request of the defendant for binding instructions ought to have been affirmed and his motion for judgment non obstante veredicto should have prevailed.

The judgment is reversed and judgment is now entered in favor of the defendant notwithstanding the verdict.