16714

HAMRICK v. COOPER RIVER LUMBER CO.

(74 S. E. (2d) 575)

*Messrs. Norval N. Newell,* of Moncks Corner, and *Woods & Woods,* of Marion, *for Appellant,*

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Respondent,*

February 9, 1953.

OXNER, Justice.

This action was brought by George H. Hamrick, a real estate broker in Charleston, to recover commissions of $5,000.00 alleged to have been earned by procuring a pur- chaser who entered into a contract to buy from the Cooper River Lumber Company a tract of land in Charleston County, containing 700 acres, for $50,000.00. The purchaser refused to comply. The broker alleges that his services were fully performed and his right to compensation arose when the seller accepted the purchaser and entered into a valid and binding contract of sale. The seller contends that under the terms of the contract the broker was not to receive any compensation unless the sale was consummated.

By consent of the parties, the case was referred to the Master for Charleston County, as special referee, to hear

and determine the issues involved. He decided all questions in favor of the broker and recommended that he have judgment against the seller for the sum of $5,000.00, which represented a commission of 10% on the purchase price. This report was confirmed by the Circuit Court. The seller, Cooper River Lumber Company, has appealed.

The controlling facts are not in dispute. In November, 1946, respondent, who did not personally know the officers of the Cooper River Lumber Company and had had no previous dealings with them, wrote a letter to the Secretary and Treasurer, stating that he had a party who was interested in buying the 700 acre tract of land and inquiring whether the Lumber Company was interested in selling. The latter indicated that it was. Considerable negotiations followed. Finally, on February 11, 1947, appellant wrote respondent, giving Dr. J. T. Hiott, a prominent Charleston physician and a prospective purchaser found by respondent, an option to purchase the property on or before February 22nd for $50,000.00. On February 22, 1947, respondent, the broker, prepared and Dr. Hiott executed a contract to purchase this property for said amount of $50,000.00, payable in cash, and Dr. Hiott delivered to respondent a binder in the sum of $2,500.00. On the same day, respondent forwarded this contract in triplicate, along with his check for $2,500.00, to the Secretary and Treasurer of appellant for execution. The contract was promptly signed by appellant and two copies returned to respondent.

It was stipulated in the contract of sale: "Settlement is to be made not before April 1, 1947 or after April 15, 1947. Upon the delivery of a good and marketable title to the property above described." It was also provided: "The Seller agrees to pay George H. Hamrick a commission of ten (10%) per cent on date of settlement." The contract further recited that the sum of $2,500.00 had been paid to the seller on account of the purchase price, which the parties agreed should be forfeited to the seller, "should default be

made in the payment of the balance of the purchase price upon the terms and conditions aforesaid."

As heretofore stated, Dr. Hiott, the purchaser, refused to comply. He stated in his testimony that he was unable to raise the money to pay the purchase price. He further testified that he became convinced that he was faced with a loss of six or seven thousand dollars if he purchased the property, and that he preferred to forfeit the deposit of $2,-500.00 rather than comply with the contract. The seller, after some inquiry as to the financial condition of the purchaser, decided not to institute an action for specific performance. There is some conflict in the testimony as to the financial worth of Dr. Hiott and as to whether any judgment against him would be collectible. The Master made findings of fact, which were concurred in by the Circuit Judge, that the purchaser was financially able to buy the property; that respondent acted in good faith in handling the transaction; and that the only reason the purchaser refused to comply was that he preferred to forfeit the $2,500.00 deposit rather than incur the possibility of a greater loss by complying. The correctness of these factual conclusions will be assumed, and the case regarded as one where a purchaser, financially able to comply, enters into a valid and binding contract of sale with the seller and deliberately defaults.

Respondent relies, and recovery was allowed by the Court below, upon the rule that ordinarily a broker has earned his commission when he procures a purchaser who is accepted by the owner of the land and with whom the latter, uninfluenced by any misrepresentation or fraud on the part of the broker, enters into a valid and enforceable contract, and that such right to compensation will not be defeated by the failure or refusal of the purchaser to consummate the contract. The stated rule seems to be sustained by the overwhelming weight of authority. 8 Am. Jur., Brokers, Sections 179 and 186; Annotations 51 A. L. R. 1390 and 73 A. L. R. 926. It was recognized by this Court in *Fairly v. Wappoo Mills,* 44 S. C. 227, 22 S. E.

108, 116, 29 L. R. A. 215. In that case, Mr. Chief Justice McIver quoted with approval the following: "The broker undertakes to furnish a purchaser, and is bound to act in good faith in presenting a person as such, and when one is presented the employer is not bound to accept him or to pay the commission, unless he (the purchaser) is ready and able to perform the contract on his part according to the terms proposed; but if the principal accepts him, either upon the terms [previously proposed or upon modifications] then * * * agreed upon, and a valid contract is entered into between the principal and the person presented by the broker, the commission is earned."

It is equally well settled that the broker and owner "may make such a contract for the broker's services as is agreeable to them, and may make the payment of the broker's commission dependent upon the full performance of the contract of purchase or sale, or postpone the payment of the commission, or make the broker's right to the commission contingent upon the happening of future events". *Brown Paper Mill Co., Inc. v. Irvin,* 8 Cir., 146 F. (2d) 232, 235. In *Segal Brokerage Co., Inc., v. Lloyd L. Hughes, Inc.,* 9 Cir., 96 F. (2d) 208, 210, the Court said: "Where the obligation of the principal to pay commissions depends upon the performance of conditions precedent, the broker takes the risk of nonperformance on the part of the customer. As said in *Fuller v. Bradley Contracting Co.,* 183 App. Div. 6, 170 N. Y. S. 320, 328, 'a broker may bind himself not to demand payment unless the contract is actually carried out. * * * Such agreements are lawful and proper, and not unusual.' "

It follows from these authorities that the concrete question here is whether there was any special agreement by which commissions were dependent upon some condition beyond that implied by the ordinary broker's contract. More specifically, we must determine the effect of the stipulation in the contract that appellant was to pay respondent "a commission of ten (10%) per cent on date of settlement." Does

this contemplate that respondent was not to receive any commission unless the transaction was consummated by the payment of the purchase price?

Promises to pay brokers' commissions for selling real estate have been held to be conditional when expressed to be performed " 'on the day of passing title' ", *Leschziner v. Bauman*, 83 N. J. L. 743, 85 A. 205; "when the sale is completed", *Sams v. Olympia Holding Co.*, 153 Wash. 254, 279 P. 575: "at settlement", *Simon v. Myers*, 284 Pa. 3, 6, 130 A. 256; "when the sale is consummated", *Alison v. Chapman*, 36 Cal. App. 759, 173 P. 389; "at the date of passing title", *Baum v. Goldblatt*, 81 Pa. Super. 233, 238; " 'at the time of the consummation' " of the sale, *Morse v. Conley*, 83 N. J. L. 416, 85 A. 196, 197; "at time of settlement", *Kaiser v. Grossman*, 87 Pa. Super. 421; if the " 'deal is completed' ", *Pratt v. Irwin*, Mo. App., 189 S. W. 398, 399; "upon closing title", *Lippincott v. Content*, 123 N. J. L. 277, 8 A. (2d) 362, 363; "on the day the conveyances are executed", *In re Boley's Estate*, 211 Wis. 431, 248 N. W. 452, 454; "on the closing of title", *Amies v. Wesnofske*, 255 N. Y. 156, 174 N. E. 436, 437, 73 A. L. R. 918. In the last-mentioned case the Court said: "Nor will it do to say that a promise to pay 'on the closing of title' is a promise to pay on the date fixed by the contract of sale for the closing of title. No such thought is expressed by the words. It is the event itself, not the date fixed for its happening, which makes the promise to pay performable. We think that reason and authority compel the conclusion that we have here a promise to pay a broker upon a condition which has not been fulfilled."

A contrary view has been taken in several New Jersey decisions which have construed words similar in import to those above referred to, not as creating a contingency or condition precedent, but as designating the time of payment. In *Tucker, Inc., v. Mahaffey*, 139 A. 806, 807, 6 N. J. Misc. 17, the commissions were to "be due and payable at time of final settlement"; in *Doe v. Eggleston*, 106 N. J. L. 565,

146 A. 175, the commissions were "to be paid at settlement"; in *Laden, Inc., v. Lidgerwood Estates, Inc.,* 192 A. 425, 15 N. J. Misc. 498, the commissions were to be paid "at the time of the delivery of the deed and the closing of the title." In all three of these cases it was held that the quoted words were merely intended to fix a date when commissions earned should be paid and not to fix a condition precedent.

We think the words, "on date of settlement", as used in the contract before us, were intended to make liability for commissions contingent upon the payment of the purchase price and the closing of the transaction. This is the meaning the contract would have conveyed to the ordinary business man and no good reason appears why it should not be given that construction. The parties clearly did not contemplate that in executing this contract, there arose an absolute obligation on the part of the seller to pay a commission of $5,000.00, irrespective of whether the sale was ever consummated. They were not undertaking to designate a time of payment but sought to create a condition precedent. But if the quoted phrase be regarded as ambiguous, any doubt as to its meaning must be resolved against respondent who prepared the contract and submitted it to the seller and purchaser. *Charles v. West,* 155 S. C. 488, 152 S. E. 644; *Murray v. Texas Co.,* 172 S. C. 399, 174 S. E. 231; *Campbell v. Swallow,* 50 R. I. 467, 149 A. 254.

The suggestion was made in oral argument that we should not disturb a concurrent finding by the Master and Circuit Judge as to the meaning of the words, "on date of settlement". But the rule sought to be invoked has no application here. Respondent contended that there was no ambiguity in the contract of sale and offered no testimony to show the intention of the parties. Indeed, respondent's counsel objected to testimony by the Secretary and Treasurer of appellant that the commission was to be paid out of the purchase price. The conclusion of the Court below was purely a legal one based upon the terms of the contract.

There never having been a "settlement" or payment of the purchase price, the condition upon which the commissions were to be paid never arose and no liability exists therefor. This conclusion does not conflict with the case of *Charles v. West, supra,* strongly relied on by respondent. That case involved a construction of a so-called "due bill" given by the seller to the broker after the execution of the contract of sale. There was a dispute as to the nature and purpose of this document, which was drawn by the seller. The Court found that it was ambiguous and held that parol testimony was admissible to show the intention of the parties. The jury found in accordance with the contention of the broker and awarded a verdict accordingly. That case presented an entirely different factual situation and the question involved in the instant case was not before the Court.

The Circuit Judge stated: "I am not impressed with the seller retaining the $2,500.00 and leaving the plaintiff out in the cold." Both the Master and the Circuit Judge also referred to the fact that appellant had never brought any action for specific performance. But we do not think that the considerations mentioned affect appellant's liability for commissions. In *Amies v. Wesnofske, supra,* 255 N. Y. 156, 174 N. E. 436, 438, 73 A. L. R. 918, a number of authorities are cited to sustain the following statement: "It has been very generally held that a vendor is under no duty to his broker to enforce specific performance by the vendee, when commissions are conditioned upon performance; that the vendor may accept forfeiture by the vendee, retain the down payment made, and not become liable thereby to pay his broker."

In oral argument respondent's counsel stated that he was making no claim for commissions on the amount forfeited of $2,500.00. He asserted that respondent was entitled to commissions of $5,000.00 on the full purchase price or nothing. It is, therefore, unnecessary for us to discuss the relative rights of the seller and broker to the $2,500.00 for-

feited by the purchaser. There is an annotation on this question in 9 A. L. R. (2d) 495.

Judgment reversed and case remanded for entry of judgment in favor of appellant.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.