19532

H. C. SHACKELFORD et al., Appellants, v. Carmen WALPOLE, Respondent

(193 S. E. (2d) 541)

*Edward P. Blanton, Jr.,* of *Furman & Jenkins,* North Charleston, *for Appellants,*

*Messrs. Legare, Hare & Smith,* and *Gibson, Gibbs & Krawcheck,* of Charleston, *for Respondent,* ▅▅▅▅▅▅

December 7, 1972.

BRAILSFORD, Justice:

On November 1, 1968, one Carmen Walpole granted an exclusive listing of her "property located at Johns Island (Portion of Creekside Farms)" to Ford Brothers Realty Company, agreeing to pay a broker's commission of 10% of the total sales price of $150,000.00 if the property should be sold while so listed, or within six months thereafter to a prospect procured by the broker. The broker's exertions resulted in the execution of a contract for the sale at this price to one Martin Truluck of the principal's Johns Island land, described in the contract as 173 acres of highland and 167 acres of marshland. The terms as to payment were $1,000.00 on signing, $41,000.00 "at the closing of this transaction, which closing will take place on or before sixty (60) days," and the balance in ten annual installments, etc. Ford Brothers had agreed to share its commission with other brokers and the contract of sale as negotiated contained the following provision:

"Seller is to pay the real estate commission of Fifteen thousand ($15,000.00) Dollars *at the time of closing,* which commission shall be divided among H. C. Shackelford, Ford Bros. Realty Company and T. Ballard Lesemann." (emphasis ours)

When a resurvey of the property revealed that Mrs. Walpole's part of Creekside Farms contained only 107.5 acres of highland and 73 acres of marsh, instead of 173 acres and 167 acres, respectively, as represented by the plat of a 1930 survey on which the contract description was based, the purchaser claimed a pro rata reduction in the purchase price, and the seller demanded the full sum, contending that the sale was of the land in gross. After issue joined in an action by Truluck against Mrs. Walpole, the plaintiff amended his complaint to ask recision of the contract on the ground of mutual mistake and return of the $1,000.00 down payment. Mr. Walpole admitted the allegations of the amended complaint and joined in the prayer thereof. However, she alleged that the down payment was held by the brokers referred to in the contract, and petitioned that they be joined as parties defendant. This was done, and these defendants filed an answer denying the allegations of the amended complaint, and, by cross-complaint, sought judgment for the full amount of the commission, alleging that they had earned it by producing a bona fide purchaser for the listed land at the specified price of $150,000.00 on terms accepted by the seller.

In this state of the pleadings, the only remaining issue was whether the brokers had earned their commission. The court resolved this issue against them on motion for summary judgment under Circuit Court Rule 44. Preliminarily, the court had granted a recision of the sales contract based upon the allegations and admissions of the parties to that instrument. The brokers insist that they are not bound by this accord between purchaser and vendor, and that, having denied the allegations of the amended complaint with respect to the invalidity of the contract, they are entitled to

a trial on the merits of that issue. They are so entitled if, and only if, (1) a bona fide dispute as to an issue of fact affecting the validity of the sales contract exists; and, (2) their commission would be saved by a decision that the sales contract was obligatory on the vendor and purchaser as a sale in gross.

Only the bare bones of a proposal to sell were stated in the listing agreement. Further negotiations were essential to accomplish a sale unless the brokers should produce a purchaser who was ready, willing and able to pay $150,000.00 in cash for Mrs. Walpole's Johns Island property. This they do not pretend to have done. Instead, an interested prospect was produced and acceptable terms were negotiated by the parties, with one or more of the brokers and Mrs. Walpole's attorneys participating, which were incorporated into the executed contract.

We find no fault with the following statement of the rule, which we quote from the brokers' brief, in support of which counsel cite *Hamrick v. Cooper River Lumber Co.*, 223 S. C. 119, 74 S. E. (2d) 575 (1953); 18 S. C. L. R. 828, 829, 830, 831; 12 Am. Jur. (2d) Brokers, section 183, at page *922*:

"In the absence of special contractual provisions to the contrary, the only factors necessary to entitle a broker to a commission are that an able, ready, and willing customer be produced within the proper time, on the terms that principal has prescribed, or on terms that are satisfactory to the principal."

For the reasons already stated, no sale upon the terms of the listing is or could be claimed. The claim of a sale on terms satisfactory to the principal necessarily rests upon the sales contract, which was signed by Mrs. Walpole and by one of the brokers as agent for the purchaser. While the brokers are not formal parties to this instrument, they must rely upon it as the fruition of their efforts to bring the parties together. The terms of the contract are of the es-

sence of the claimed sale, by which the brokers' entitlement to a commission must be measured. Cf. 12 Am. Jur. (2d), Brokers, Sec. 187 (1964); Restatement, Agency (2d), Sec. 445, comment d, p. 347 (1958).

In this light, *Hamrick v. Cooper River Lumber Co.,* 223 S. C. 119, 74 S. E. (2d) 575 (1953), is conclusive against the brokers' claim. In. *Hamrick* the negotiated contract of sale between the principal and the purchaser provided, "The Seller agrees to pay (the broker) a commission of ten (10%) per cent on the date of settlement." After execution of the contract, the purchaser concluded that he had made a bad bargain and declined to comply. The circuit court allowed the broker his commission "upon the rule that ordinarily a broker has earned his commission when he procures a purchaser who is accepted by the owner of the land and with whom the latter, uninfluenced by any misrepresentation or fraud on the part of the broker, enters into a valid and enforceable contract, and that such right to compensation will not be defeated by the failure or refusal of the purchaser to consummate the contract." 223 S. C. at 123, 74 S. E. (2d) at 576. This Court reversed, holding that the promise to pay a commission was limited by the words "on date of settlement"; hence, the promise was "contingent upon the payment of the purchase price and the closing of the transaction," which had not come to pass. Here, the italicized words "at the time of closing" in the quotation from the sales contract in the forepart of this opinion convey the same meaning and must be given like effect.

It follows that the brokers' commission would not have been saved by a determination that the sales contract was obligatory on the vendor and purchaser as a sale in gross. Hence, there was no disputed issue of fact upon which the rights of the parties depended, and the court did not err in granting summary judgment.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.