19880

MID-CONTINENT REFRIGERATOR COMPANY, Respondent, v. Willie C. WAY, Appellant

(208 S. E. (2d) 31)

102

*Messrs. Marshall B. Williams,* of Orangeburg, and *Hammer and Bernstein,* of Columbia, *for Appellant,*

*Messrs. Bryant, Fanning & Yarborough,* of Orangeburg, *for Respondent,*

August 27, 1974.

BUSSEY, Justice:

The plaintiff-respondent instituted this action alleging a breach of a contract, denominated a lease, under which it had furnished to the defendant-appellant, Way, certain refrigeration equipment. The plaintiff sought to recover 36 monthly installments allegedly due it, totaling the sum of $3,744.00, certain additional expenses allegedly incurred by it and attorney's fees.

The defendant, by answer, denied the material allegations of the complaint, alleged that the plaintiff rather than the

defendant had breached the terms of the contract and she further interposed a counterclaim seeking damages allegedly sustained as a result of plaintiff's breach of conrtact.

Upon the trial of the case both parties moved for directed verdicts in their respective favors. The trial judge directed a verdict against the plaintiff as to the alleged additional expenses and attorney's fees from which direction plaintiff does not appeal. He directed a verdict, however, in favor of the plaintiff for the balance of 36 monthly installments allegedly due it; denied the defendant's motion for a directed verdict and granted a nonsuit as to defendant's counterclaim. Only the defendant appeals, asserting error in denying her motion for a directed verdict, and error in granting the plaintiff's motions. The motions having been decided adversely to the defendant, it is elementary that in determining whether the trial judge was correct, the evidence and all of the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the defendant. We accordingly review the evidence and state the facts in the light of this basic principle.

The plaintiff, Mid-Continent, is a corporation whose principal place of business is located in Denver, Colorado and it is engaged in the business, inter alia, of supplying, under contract, refrigeration units and/or display cases to mercantile establishments. The defendant is the owner and operator of Way's Grocery located on S. C. Highway 6 near Vance in Orangeburg County. In December, 1971, in response to an inquiry from the defendant, a salesman for plaintiff called upon defendant at her place of business. After some discussion the parties entered into a contract whereby the plaintiff delivered to defendant's place of business two frozen food merchandisers, the same being delivered on or about December 21.

The contract between the parties actually consisted of two written documents both upon plaintiff's printed forms and executed simultaneously by the

parties on December 3, 1971. The first document has at the top of the first page the words "financing statement" and immediately thereunder the word "lease." It is a four page document and contains, in addition to unnumbered paragraphs, 25 numbered paragraphs in relatively fine print. This document is in the form of a lease, under the terms of which the units were leased to the defendant for a term of four years, with 48 installments of rent at the rate of $104.00 per month commencing on December 25, 1971. Under one of its provisions the option was given to the defendant to obtain five successive new leases for one year periods at the rate of $104.00 per annum. The other document constituting the contract between the parties was the "shipping order" and this document is not entirely consistent in its terms and provisions with the lease. The shipping order makes more than one reference to the accompanying lease, and among other things, it gives to the defendant the option to obtain title to the equipment at the termination of the four year lease, at no charge whatever except sales tax in the amount of $112.35. It is, of course, elementary that any ambiguities or conflicts in these documents, prepared by the plaintiff, have to be construed favorably to the defendant and we shall later revert to what we think is the meaning and effect of the two documents, when all of the provisions are considered together. Upon execution of the documents defendant paid three monthly installments; thereafter she paid nine monthly installments, making a total payment of $1,248.00.

The equipment functioned quite satisfactorily during the winter months, but as soon as the weather became hot such commenced to malfunction and as the result thereof the defendant sustained damage through loss of merchandise, refunds to customers for spoiled merchandise and loss of customers. She repeatedly reported the malfunction to Mid-Continent, who declined to do anything whatever about defendant's complaints. The defendant, or her agent, consulted a refrigeration expert in Orangeburg, who came and

examined the equipment and after this examination defend-
ant advised plaintiff that she would make no further pay-
ments and that in the absence of it doing something about
the defective equipment it should take the equipment back.
When the defendant so notified the plaintiff, she was not in
default on any of the monthly payments and the plaintiff
did actually repossess the equipment on October 2, 1972,
with the defendant making no further payments thereafter.

Upon trial the plaintiff offered no evidence of any
breach of contract by the defendant other than her
failure to make the remainder of the payments which
would have come due under the terms of the lease after she
no longer had the equipment. It also offered no evidence as
to the equipment, its condition, or what it did with it, and
no evidence of any damage sustained by it. Instead it relied
upon a provision of the lease which accorded it the right
"to sue for and recover all rents, then accrued or thereafter
accruing" despite the fact that it had already repossessed
the equipment. The defendant opposed plaintiff's motion for
a directed verdict and moved for a directed verdict in her
favor, as to plaintiff's alleged cause of action, on the grounds
that the plaintiff had neither proved any damages nor any
breach of contract by the defendant. As to the amount of
damages, we think the court was clearly in error in directing
a verdict favorably to the plaintiff. The language of the
lease relied upon by the plaintiff is in the nature of a penalty,
which is not favored in the law, and if enforceable at all, it
would only support a cause of action for any damages
actually sustained by the plaintiff, the measure of which
would be affected by the duty of minimizing its damages.
See *Gentry v. Recreation, Inc.,* 192 S. C. 429, 7 S. E. (2d)
63; West's South Carolina Digest, Damages Key No. 75
*et seq.*

The plaintiff having offered no evidence whatever of any
damage sustained by it, it was entitled to nothing more than
nominal damages, in the event of it being determined that
there was a breach by the defendant, and it follows that on

the issue of damages the trial court should have directed a verdict in favor of the defendant, save as to nominal damages.

In granting plaintiff's motions, and denying that of the defendant, the trial judge relied upon the repair clause in the lease and the decision of this Court in *Mid-Continent Company v. Dean,* 256 S. C. 99, 180 S. E. (2d) 892, upholding the validity of a similar, if not identical, repair clause. The clause of the instant lease reads as follows:

"Repairs: Lessee shall inspect the equipment within 48 hours after its receipt; unless within said time, lessee notified lessor, stating the details of any defects, lessee shall effect and bear the expense of all necessary repairs, maintenance, operation and replacements."

For more than one reason the *Dean* case is not here controlling. In Dean recovery of rental was allowed only for the period of time Dean retained possession of the equipment, and here recovery is for the period of the lease remaining after the repossession of the equipment by the plaintiff. In addition to factual differences, a number of issues are raised in the instant case which were neither raised nor passed upon in the *Dean* case.

The precise nature of the malfunction of the equipment is not disclosed by the record save that when the weather got hot the lower levels of the equipment would not freeze, for some reason, with the result of spoilage of merchandise. The one expert from Orangeburg who examined the equipment, and advised its return to the plaintiff, was not called as a witness, and explanation of the failure to call him was mentioned only in the argument of counsel when it was stated he was out of town. It is the defendant's contention that, the repair clause of the lease notwithstanding, the principle that a sound price impliedly warrants a sound commodity is applicable to this transaction and that the evidence proves such a breach of this implied warranty by the plaintiff.

Whether the principle of implied warranty is applicable to this transaction can be more readily decided, we think, by considering and deciding whether or not, as conversely argued by the parties, the instant transaction is governed by the provisions of the Uniform Commercial Code Section 10.2-101 *et seq*. In Code Section 10.2-106 the word sales is defined as follows: " 'a sale' consists in the passing of title from the seller to the buyer for a price." The term "contract for sale" is defined as including a present sale of goods and a contract to sell goods at a future time.

■ When the two contract documents are construed together, resolving as we must all conflicts and ambiguities in favor of the defendant, we conclude that such documents together constitute a contract for the sale of goods and accordingly a contract which is subject to the provisions of the Uniform Commercial Code. It is, of course, true that the title is not to pass to the defendant until the expiration of four years and then only at her option and upon the payment of a final, relatively nominal, consideration of sales tax in the amount of $112.35. The true and real consideration for the sale of the goods, with interest thereon, was obviously embodied in the so-called rental payments required by the document purporting to be only a lease. Only a relatively few jurisdictions have had occasion to consider whether a contract, such as this, is one for the sale of goods and accordingly subject to the terms of the Uniform Commercial Code, but the clear weight of authority is in accord with the conclusion which we reach. See annotation in 48 A. L. R. (3rd) 668, sections 4 and 9.

■ The contract being one for the sale of goods there was an implied warranty of soundness by the plaintiff-seller, both by virtue of the Uniform Commercial Code (Section 10.2-314), and the well established law of this State, and the defendant-purchaser was entitled to the benefit thereof unless such implied warranty was excluded from the contract in accordance with the provisions of Code Section 10.2-316, which provides, inter alia, that for an

implied warranty of fitness to be excluded from the contract "the exclusion must be by a writing and conspicuous." There is a clause in the lease which attempts to exclude all warranties, except written warranties provided by the lessor, said provision being Paragraph 12 in the lease. We can best describe it by simply saying that it falls far short of complying with the provision of the code; that such attempted exclusion, to be effective, must be *conspicuous*. As far as the record goes the only warranty in writing, furnished by the lessor-seller, is that contained in the shipping order which in pertinent part reads, "our guarantee includes: * * 1 year replacement of defective parts F.O.B. factory."

We do not hold that the repair clause is without any force and effect, but do hold that such is not efficacious to exclude the implied warranty of fitness by the seller. It is, of course, elementary that any conflict between the repair clause and any other provision of the contract documents would have to be resolved or construed in favor of the defendant. For instance, the repair clause makes the lessee-purchaser responsible for replacements, but the express guarantee, in the purchase order, provides that, at least for one year, the lessor-seller shall provide replacement of defective parts. Just what repairs would be the liability or responsibility of the purchaser under the repair clause of the lease and what would be the responsibility of the seller under its implied warranty would be dependent, we think, upon the facts of the particular case, and in the instant case the record contains virtually no information as to the nature of the defect or defects, whether or not such could be feasibly corrected or the repairs or replacements necessary to correct such.

We call attention to the provisions of Code Section 10.2-302 dealing with contracts and contract clauses claimed, or found by the court, to be unconscionable. We do so because at least some of the contentions of the plaintiff as to clauses of the contract documents upon which it relies, if construed

110

as urged by the plaintiff, would raise questions as to whether such provisions were unconscionable within the purview of the cited code section.

Under all of the circumstances reflected by the record, and the foregoing principles of law, we conclude that the lower court was in error in directing a verdict for the plaintiff for the balance of the installment payments and in granting a nonsuit as to defendant's counterclaim. In brief, we hold that the evidence presented a jury issue as to whether the contract was breached by the plaintiff or breached by the defendant. We further hold that there was no proof of any damage by the plaintiff, with the result that on the present record, it was not entitled to any damages other than nominal damages, if in fact, the contract was breached by the defendant rather than the plaintiff.

The judgment below is accordingly reversed and the case remanded for a new trial.

Reversed and remanded.

LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.

Moss, C. J., concurs in result.