## 23696

Arthur M. PARKER, Jr., Respondent v. E. Thomas BYRD, Jr.,
and Lakewood Plantation, Inc., Appellants.

(420 S.E. (2d) 850)

Supreme Court

*Andrew K. Epting, Jr.,* of *Wise & Cole, P.A.,* Charleston, *for appellants.*

*W.E. Jenkinson, III* and *Helen T. McFadden,* both of *Jenkinson and Jenkinson,* Kingstree, *for respondent.*

Heard May 6, 1992.

Decided Aug. 10, 1992.

TOAL, Justice:

This appeal arises from the order of the Special Referee awarding specific performance to the vendor of a contract to sell land and corporate stock. We affirm.

## FACTS

Appellant ("Byrd") and respondent ("Parker") purchased Lakewood Plantation in August of 1988. The land was titled in both names as tenants in common. The farm operations and farm equipment were held by Lakewood Plantation, Incorporated. Parker and Byrd each owned fifty percent of the corporate stock.

In September 1989, Lakewood was severely damaged by Hurricane Hugo. Within days of Hugo, Byrd photographed the damage at Lakewood. Byrd took the photographs to Parker's home. The two men argued about the future ownership of Lakewood, each offering to purchase the interest of the other. The negotiations continued until December 14, 1989, when the two entered into a contract whereby Parker agreed to sell all of his interest in Lakewood to Byrd.

Under the contract, Byrd was to pay Parker $475,000 for his interest in Lakewood, $10,000 as earnest money, $190,000 at closing, and a note for $275,000. The closing was to take place before December 31, 1989 at the office of Robert Kunes, Esquire, who drafted the contract.

On December 28, 1989, when Parker arrived at the office of Mr. Kunes to close on the sale, he found that the documents were backdated. The sale of the corporate stock was backdated to January 1, 1989 and the sale of the land was backdated to August 15, 1989, prior to Hugo. The effect of the backdated documents would be that Byrd would receive all of the $200,000 insurance proceeds from the Hugo loss and Byrd

would also receive all of the tax losses for the year 1989. Parker refused to close on the backdated documents. Byrd refused to close on current-dated documents. Thereafter, Parker sued for specific performance. The Special Referee found that Byrd was in breach of the contract and granted specific performance to Parker. Byrd appeals.

## LAW/ANALYSIS

A contract for the sale of a plantation as a going concern, including corporate stock, implements, and supplies, for a fixed sum, may be specifically enforced in equity as an entirety. *Brown v. Smith*, 109 F. 26 (D.S.C. 1901). In an action in equity, this Court may find facts in accordance with its view of the preponderance of evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S. E. (2d) 773 (1976). This broad scope of review, however, does not require that the findings below be disregarded. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E. (2d) 616 (1981).

Byrd relies on the following paragraph in the contract: "The parties agree that they shall cooperate in determining the time for the consummation of the sale for tax purposes." In interpreting this provision in the contract, Byrd claims that the parties intended to backdate[1] the documents; thus, Parker, not Byrd, breached the contract. Alternatively, Byrd claims the provision is so ambiguous that there was no "meeting of the minds" such that the Special Referee erred in awarding specific performance of the contract. We disagree.

"The purpose of all rules of contract construction is to ascertain the intention of the parties to the contract. Where the agreement in question is a written contract, the parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Thomas-McCain, Inc. v. Siter*, 268 S.C. 193, 197, 232 S.E. (2d) 728, 729 (1977).

### Land Sale

Byrd claims the following term in the contract allowed him to backdate the land sale documents to August 15, 1989: "The parties agree that they shall cooperate in

---

[1] The term "backdated" is used to identify Byrd's proposal that the transaction be effective at a date earlier than the date the document was signed. No opinion is requested or expressed as to the propriety of such a provision.

determining the time for the consummation of the sale for tax purposes." The consequence of backdating the land sale documents is that Byrd would receive all of the insurance proceeds from the Hugo loss.

The term in the contract on which Byrd relies makes no mention of the insurance proceeds. In fact, the entire contract is devoid of any mention of the insurance proceeds. The insurance proceeds were heavily negotiated. Byrd's witnesses testified that Parker became enraged and walked out of the negotiations when Byrd told Parker that he wanted all of the insurance proceeds. Byrd and Parker are both sophisticated businessmen. Mr. Kunes, Byrd's lawyer, drafted the contract.

Insurance contracts are personal. The benefits run with the individual and not with the land. *Crook v. Hartford Fire Ins. Co.*, 175 S.C. 42, 178 S.E. 254 (1935). Thus, for personal property to be included in the sale of real estate the personal property would have to be part of the contract.[2] The sale of the corporate stock was part of the contract. The insurance proceeds, however, simply were not included in the contract. Generally, "a written agreement between two persons merges all prior talk and negotiations about the subject of the agreement." *Gantt v. Van der Hoek*, 251 S.C. 307, 317, 162 S.E. (2d) 267, 272 (1968). "Words cannot be read into a contract which import intent wholly unexpressed when the contract was executed." *McPherson v. J.E. Sirrine & Co.*, 206 S.C. 183, 204, 33 S.E. (2d) 501, 509 (1945). It is logical, therefore, for us to assume that had the parties intended to include the insurance proceeds in the sale of the land, they would have done so. Based upon the evidence presented at trial, we agree with the Special Referee. The disputed term does not entitle Byrd to have the sale of the real estate backdated to August 15, 1989, and thus receive the entire insurance proceeds. Accordingly, we affirm the Special Referee's order finding Byrd breached the contract for sale by refusing to close on current-dated documents.

---

[2] Byrd does not claim there was a collateral agreement or that there was an additional term.

## Corporate Stock Sale

Byrd claims the same term[3] in the contract allows him to backdate the sale of the corporate stock to January 1, 1989, so that Byrd would receive all of the 1989 tax benefits. Mr. Oxner, the corporate CPA, testified at trial that tax losses could not be legally bought or sold. In his brief, Byrd argues that in this corporate structure, tax losses can be legally bought and sold. We are not concerned, however, with the actual legality or illegality of the backdating of the documents in order to allocate all tax losses to Byrd. Rather, our focus is on what the parties contemplated at the time of the contract. *See Thomas-McCain, Inc. v. Siter,* 268 S.C. 193, 232 S.E. (2d) 728 (1977).

"Every contract entered into in this State embodies in its terms all applicable laws of the State just as completely as if the contract expressly so stipulated." *Inabinet v. Royal Exchange Assur. of London,* 165 S.C. 33, 36, 162 S.E. 599, 600 (1932). As corporate CPA, Mr. Oxner testified that the parties could, consistent with Federal and State law, allocate corporate tax losses from the day of the agreement to sell the corporate stock.[4] Common sense and good faith are the leading touchstones of construction of the provisions of a contract; where one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail." *C.A.N. Enterprises, Inc. v. S.C. Health and Human Services Finance Comm'n,* 296 S.C. 373, 377, 373 S.E. (2d) 584, 586 (1988). We cannot assume that the parties intended to pass tax deductions which the corporate CPA thought illegal at the time of the contract.

The interpretation urged by Byrd is unusual and extraordinary. The results of that interpretation would yield unfair and perhaps illegal results. Further, Kunes prepared the contract. The record reveals that at the time of the contract Kunes was representing Byrd while serving as corporate counsel. Our cases have long held that ambiguities must be construed

---

[3] "The parties agree that they shall cooperate in determining the time for the consummation of the sale for tax purposes."

[4] The contract was dated December 14, 1989. The closing documents prepared by Mr. Kunes were backdated to January 1, 1989.

against the party who prepared the contract. *Williams v. Teran, Inc.*, 266 S.C. 55, 221 S.E. (2d) 526 (1976); *Mid-Continent Refrigerator Co. v. Way*, 263 S.C. 101, 208 S.E. (2d) 31 (1974); *Sample v. Gulf Refining Co.*, 183 S.C. 399, 191 S.E. 209 (1937); *Tuten v. Bowden*, 173 S.C. 256, 175 S.E. 510 (1934); *Charles v. West*, 155 S.C. 488, 152 S.E. 644 (1930); *Calhoun v. Reynolds*, 1 McMul. 304 (1841). Thus, any ambiguity must be interpreted against Byrd and in favor or Parker.

As to Byrd's claim that the provision is so ambiguous as to render the contract unenforceable, we hold "a party to a written contract, where there is no ambiguity or indefiniteness in the essentials, cannot say their minds did not meet." *Arant v. Mack*, 204 S.C. 287, 294, 28 S.E. (2d) 846, 849 (1944). Here, there is no ambiguity in the essentials of specific property for a specific price mutually agreed upon by the parties as evidence by their signatures.

"There exists in every contract an implied covenant of good faith and fair dealing." *Tharpe v. G.E. Moore Co.*, 254 S.C. 196, 201, 174 S.E. (2d) 397, 399 (1970). There is nothing, however, to prevent the parties from expressly agreeing to act in good faith in facilitating the objectives of the contract. In our opinion, the disputed term was merely an expression by the parties to act in good faith to facilitate the closing of the sale. We dismiss all remaining issues as without merit and affirm the order of the Special Referee.

Affirmed.

FINNEY, Acting C.J., MOORE, J., and BRUCE LITTLEJOHN and JASPER M. CURETON, Acting Associate Justices, concur.