2378

VALLEY PUBLIC SERVICE AUTHORITY, Respondent v. BEECH ISLAND RURAL COMMUNITY WATER DISTRICT, Appellant.
(462 S.E. (2d) 296)

Court of Appeals

*Kelly F. Zier*, North Augusta, *for appellant.*

*Leo H. Hill* and *D. Garrison Hill, Hill, Wyatt, Bannister & Brown,* Greenville, and *C. Wesley Smith,* Aiken, *for respondent.*

Heard Feb. 8, 1995.

Decided July 7, 1995; Reh. Den. Sept. 21, 1995.

CURETON, Judge:

Beech Island Rural Community Water District (Beech Island) appeals from several orders enforcing and interpreting a settlement agreement reached by Beech Island and Valley Public Service Authority (Valley). We affirm.

## I.

Valley and Beech Island are in the business of providing water service in the Aiken County area. As originally established, the territorial boundaries of Valley do not overlap with those of Beech Island. For various reasons, Beech Island has over the years engaged in providing water services to cus-

tomers within Valley's territory. Beech Island's invasion of Valley's territory has caused periodic disputes between the parties, culminating in this litigation.

The matter was referred with finality to the Master-in-Equity. At the call of the case the parties advised the master that significant settlement negotiations were underway. Accordingly, the trial court allowed the parties further time to reach an agreement. On July 15, 1992, the parties informed the trial court they had reached an agreement whereby Beech Island would be allowed, as Valley's agent, to continue to provide service to part of Valley's service area. The terms of the agreement were read into the record by counsel. The agreement was reduced to writing the form of a consent order dated April 30, 1993. The portions of the April 30, 1993 consent order relevant to this appeal provide that:

> 2. Beech Island will withdraw from all areas of Valley's territory except the following areas:
>
> A. That triangular area defined upon the attached Exhibit A identified as the Piney Heights area bounded generally by Piney Heights Road and Project Road down to Baker Street and some immediately adjacent lines served by these mains.
>
> B. That area shown on Exhibit A along Pine Log Road and Storm Branch Road where Beech Island now has existing lines, being with respect to Pine Log Road from Legion Road West to Storm Branch Road and then being northerly along Storm Branch Road to the end of the current service line Beech Island has on Storm Branch Road. Beech Island's service area with respect to these existing lines shall extend for 200 feet along the northern side of Pine Log Road and along the eastern side of Storm Branch Road and no further. Specifically, Beech Island shall not serve any property which is situated beyond the 200-foot demarcation line. This limitation shall be enforced even though a property owner may own a tract of land which lies within the 200 feet. No facility, building or any other user shall be supplied by Beech Island beyond the 200-foot agreed line.

\*  \*  \*  \*  \*  \*

3. Beech Island's right to serve these areas which lie within the territorial jurisdiction of Valley arises solely under this agreement under which Beech Island shall act as agent of Valley to render service to these specific service areas. The terms and conditions of this agreement and the monies to be paid hereunder shall constitute consideration for Beech Island's continued right to serve this area.

4. Valley shall set a meter on Legion Road in order to measure the water supplied by Beech Island for the lines to be served in that area which were formerly owned and operated by Beech Island. A second meter shall be installed by Valley near Pine Street to measure water supplied by Beech in that area. In any other instance where Valley will be buying water from Beech Island, Beech Island will bear the cost of stubbing out the line and will install the stub out and Valley, at its own expenses, will install the meter.

5. Beech Island shall sell and Valley shall buy water from Beech Island necessary to serve those uses who are or may be served by the lines acquired by Valley from Beech Island up until such time as Valley itself may be able to furnish a water supply for these areas.

6. The sale of water by Beech Island to Valley shall be upon a wholesale rate no less favorable than that to any of its other such customers.

Despite having reached a settlement, Valley and Beech Island were subsequently unable to agree on the meaning of some of the terms of the agreement. Valley filed a rule to show cause seeking to hold Beech Island in contempt for failure to comply with certain requirements for the April 30, 1993 order. Beech Island denied that if failed to comply and claimed that some of Valley's demands were beyond the requirements of the order.

A hearing was held on Valley's contempt motion on July 20, 1993. The trial court did not hold Beech Island in contempt, but issued a supplemental order finding the terms of the April 30, 1993 order to be sufficiently clear in meaning "as to the territories to be served by Beech as the agent of Valley and as to the sale of water to Valley to Beech." The trial court then specifically ordered as follows:

1. Within the service territory of Valley, Beech Island is limited to serving only those customers that are within the two (2) areas assigned to Beech Island as agent of Valley and as described in Exhibits A and B to the April 30, 1993 Order.

2. Beech Island is to withdraw from service to all customers outside those territories and transfer these customers to Valley. Beech Island may serve all customers, exiting and new, within the two areas in which Beech Island is serving as agent of Valley.

3. Service for all of Beech Island's customers outside these two (2) areas will be served by Valley. . . . Beech Island shall sell to Valley as ordered by this Court on April 30, 1993, the water necessary to continue service to those customers transferred to Valley. . . .

4. Beech Island shall provide taps for meters (individual or master) and shall sell, at wholesale, water to valley as provided in the April 30, 1993 Order for new customers of Valley. These taps shall be provided to Valley as promptly and under the same conditions as they are to other customers of Beech Island.

Beech Island then moved for an amendment of the supplemental order. The trial court denied the motion in large part, but did modify and clarify a portion of the original consent order. Beech Island appeals.

## II.

This case involves the interpretation of the settlement agreement embodied in the April 1993 consent order. Like any other agreement, when the language of a settlement agreement is susceptible of more than one interpretation, it is the duty of the court to ascertain the intentions of the parties. *Mattox v. Cassady*, 289 S.C. 57, 344 S.E. (2d) 620 (Ct. App. 1986). The paramount concern of the court is to give effect to the intention of the parties. *Parker v. Byrd*, 309 S.C. 189, 420 S.C. (2d) 850 (1992); *Columbia East Assocs. v. Bi-Lo Inc.*, 299 S.C. 515, 386 S.E. (2d) 259 (Ct. App. 1989). In determining the intentions of the parties, the court looks to the language of the contract and if this language is unambiguous, it alone determines the contract's force and effect. Moreover, the parties' intention must be gathered from the contents of the

entire agreement, and not from any particular clause of the agreement. *Parker,* 309 S.C. at 191, 420 S.E. (2d) at 852. Common sense and good faith are the leading touchstones of construction of the provisions of a contract; where one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail. *Id.* at 192, 420 S.E. (2d) at 853. Every term contained in a contract must be considered and given effect if possible. *Johnson v. Glens Falls Ins. Co.,* 131 S.C. 253, 256, 127 S.E. 14, 15 (1925).

## A.

On appeal, Beech Island contends the trial court should have interpreted the terms of the agreement so as to permit Beech Island to (1) continue to provide service to those customers it was serving at the time of the filing of the litigation, with the exception of those customers served by the lines specifically transferred to Valley; (2) continue serving customers partially within 200' of Pine Log Road; and (3) provide new service to any customers within 200' of Pine Log or Storm Branch Road.

The trial court rejected this argument, finding that, as to the areas in which Beech Island may provide service, the terms of the agreement are "abundantly clear." We agree. Paragraph two of the agreement clearly provides Beech Island must withdraw from all areas except those specifically designated in the agreement. Nothing in the agreement indicates Beech Island was given authority to continue to serve customers outside the areas described. In addition, the agreement specifically prohibits Beech Island from providing service to any property outside the 200-feet demarcation line "even though a property owner may own a tract of land which lies [partially] within the 200-feet." Thus, Beech Island's interpretation of the agreement is completely inconsistent with the clear language of the agreement. Accordingly, we affirm the trial court's interpretation of this provision of the agreement.

## B.

Beech Island also challenges the trial court's interpretation of Beech Island's obligation under the agreement to sell

water to Valley.

The portions of the agreement relevant to this issue provide:

> 4. Valley shall set a meter on Legion Road in order to measure the water supplied by Beech Island for the lines to be served in that area which were formerly owned and operated by Beech Island. A second meter shall be installed by Valley near Pine Street to measure water supplied by Beech in that area. In any other instance where Valley will be buying water from Beech Island, Beech Island will bear the cost of stubbing out the line and will install the stub out and Valley, at its own expense, will install the meter.
>
> 5. Beech Island shall sell and Valley shall buy water from Beech Island *necessary to serve those users who are or may be served by the lines acquired by Valley from Beech Island up until such time as Valley itself may be able to furnish a water supply for these areas*. (Emphasis added.)

On Beech Island's motion to reconsider the supplemental order, the trial court reaffirmed its previous decision, interpreting the agreement as requiring Beech Island to sell to Valley on a wholesale basis "such water as [Valley] may require to serve customers, existing and future, in the areas in which [Beech Island] has heretofore been operating unlawfully, *and not restricted to sufficient water to serve just those lines* being purchased by [Valley] from [Beech Island] pursuant to consent order." (Emphasis added.) However, the court did modify its previous order, to hold that "equity will require [Beech Island] to furnish water to [Valley] as aforesaid in such quantities as requested until or unless this requirement shall impede [Beech Island] from performing its primary duty to its own lawful customers."

On appeal, Beech Island challenges the trial court's interpretation of paragraph five of the agreement. Beech Island argues the agreement unambiguously provides that the only mandatory sale of water by Beech Island to Valley would be on a wholesale basis and only for those lines *specifically transferred to Valley* by Beech Island pursuant to the agreement. Relying on the language of paragraph five of

the agreement, Beech Island contends the trial court's interpretation is an improper expansion of the agreement. We agree.

Prior to discussing our interpretation of the agreement, it should be noted that for whatever reason,[1] Beech Island had installed facilities in and was servicing customers in Valley's territory. There were concentrations of its customers in several of the subareas of Valley's territory. One of these subareas, referred to at oral argument as having approximately 300 customers, contained service lines which were supplied by two larger supply lines extending from the service lines to the main trunk line along the southern boundary of Valley's territory.

At oral argument, it became apparent the provision in the agreement requiring Valley to set meters on Legion Road and Pine Street was designed for the primary purpose of measuring the water to be furnished to the above-referenced concentrations of customers who, after the agreement, would be served by lines once owned by Beech Island. In addition to the concentration of service lines just mentioned, Beech Island had installed other service lines in Valley's territory that would be abandoned by it and the operation of the lines assumed by Valley. These lines were obviously hooked up to Beech Island's supply lines, and, in order for Beech to be paid for water to be furnished through them, meters would necessarily have to be installed to measure the water supplied.[2]

After Valley and Beech Island finally reached a settlement, the settlement was read into the record, and then reduced to writing in the form of the April consent order. The agreement was described to the court by Valley's attorney as follows:

---

[1] While the dissent paints a different picture of Beech Island's actions, it appears that a major reason for Beech Island invading Valley's territory was the inability of Valley to serve the needs of the residents of its territory, some of whom requested Beech provide them service. Additionally, in the past there had been some agreements between Beech and Valley that permitted some service by Beech Island of customers in Valley's territory. Thus, because Valley legally has a territory it cannot serve, Beech Island went into the area to serve some of its residents. Valley now wants Beech Island out of its territory, but wants Beech to furnish it with water to serve its customers in the area.

[2] This interpretation is supported by statements made by counsel at oral argument, the Rule to Show Cause hearing, the pleadings, and the court's order disposing of Beech Island's motion for rehearing.

> Valley has agreed to set a meter here on the Legion Road so that they measure the water coming from Beech Island into what would become their lines. And also, on another meter—what's this—Pine Street. . . . And *in any other instance where the [sic] Valley is serving their customer and buying water from Beech, the [sic] Valley will—the [sic] Beech will stub out the line and Valley will install the meter.* (Emphasis added.)

Because the emphasized provision is in the present tense, it obviously refers to a situation then in existence. Logically, it could therefore refer only to those other situations where Beech Island was abandoning existing lines to Valley and, in order to measure the water to be supplied through those lines, Beech Island would stub out the lines and Valley would install meters.

Valley, however, contends the trial court correctly found that when the agreement in question is viewed as a whole, Beech Island's proposed construction cannot prevail. Valley argues that if this court accepts Beech Island's construction of the agreement, paragraph four would then contemplate Valley constructing meters on water lines within its own territory which Valley would not be able to use. Valley argues Beech Island's proposed construction therefore renders paragraph four nonsensical, while the trial court's interpretation gives effect to both provisions. Valley thus interprets the word "areas" at the end of paragraph five to refer to any number of future lines and meters to be located anywhere in any of the various subareas of Valley's territory. We disagree.

If the parties had intended this result, the agreement simply could have said Beech Island agrees to sell and Valley agrees to buy water to serve those users *in those areas where Valley has acquired lines from Beech.* The more logical interpretation of this language is that it refers to those existing lines that will be serving former customers of Beech. This interpretation is buttressed by the fact that Beech's supplying of water to Valley was intended to be temporary in nature and only until such time as Valley could furnish water to its customers. Our interpretation lends itself to both definiteness as to the locations where meters are to be installed

and definiteness as to the lines to be served by Beech Island in the future.[3]

We therefore agree with Beech Island that the agreement cannot be interpreted to require it to provide service to new customers on new water lines installed by Valley in the future anywhere within its service area. We interpret the agreement as requiring Beech Island to furnish water to Valley to supply only those *existing* lines acquired by Valley from Beech whose operation and maintenance will be assumed by Valley, and we hereby modify the trial court's order accordingly. To do otherwise would require a rewriting of the parties' agreement by the court.

Affirmed as modified.

CONNOR, J., concurs.

HOWELL, C.J, concurs in part and dissents in part in a separate opinion.

HOWELL, Chief Judge (concurring and dissenting):

I fully concur in sections I and II(A) of the majority opinion. However, I disagree with section II(B) of the opinion relating to Beech Island's obligation to sell water to Valley under the agreement.

I believe the trial court's interpretation of the agreement with regard to Beech Island's obligation is supported by evidence in the record, and is the only reasonable interpretation given the circumstances of this case. Paragraph four of the agreement addresses not only the placement of two meters for those lines which Beech Island previously operated and now will be supplying water, but contemplates additional, future water sales for areas where Beech formerly provided service: "[i]n any other instance where Valley will be buying water from Beech Island, Beech Island will bear the cost of stubbing out the line and will install the stub out and Valley, at it own expense, will install the meter." Paragraph five pro-

---

[3] Of course, as we understand Beech Island's position, it does not object to furnishing water to new customers added to existing lines turned over by it to Valley. Clearly, paragraph five of the settlement agreement requires Beech Island to provide water to new customers of Valley who can be served by existing lines Valley has acquired from Beech.

vides that Beech Island shall sell water as necessary "to serve those users who are or may be served by the lines acquired by Valley." Viewing the consent order as a whole, I believe the trial court properly interpreted the agreement. The majority opinion focuses primarily on the word "lines" in paragraph five, and completely reads out the portions of paragraph four which refer to "any other instance where Valley will be buying water from Beech Island." The trial court's interpretation, however, harmonizes and gives effect to all terms of the agreement.

The trail court's interpretation of Beech Island's obligation to sell water is supported by evidence in the record. As noted by the majority, after the parties reached an agreement, Valley's attorney read the agreement into the record. When describing the agreement Valley' attorney stated that:

> Valley has agreed to set a meter here on the Legion Road so that they measure the water coming from Beech Island into what would become their lines. And also, on another meter—what's this—Pine Street. . . . And in any other instance where the [sic] Valley is serving their customer and buying water from Beech, the [sic] Valley will—the [sic] Beech will stub out the line and Valley will install the meter.

> \*      \*      \*      \*      \*      \*

> Now these bodies have agreed to cooperate with each other and . . . Beech Island has agreed to sell, and Valley has agreed to *buy the water from Beech Island necessary to serve these lines where these meters are set up* until the point that the [sic] Valley itself may be able to furnish a water supply for those areas.

(Emphasis added.) Beech Island's attorney concurred with this description of the settlement. It is clear from this description of the agreement that the parties intended for Valley to buy water from Beech Island to service those areas in which Beech Island had been unlawfully operating. The parties knew there would be meters on Legion Road and Pine Street, and anticipated that there would be other meters at a later point in time. The statement that Beech Island would sell the water necessary to serve the lines where "these me-

ters" are established clearly refers not only to the lines on Legion Road and Pine street, but also the other anticipated meters. Thus, the explanation of the agreement supports the trial court's interpretation of Beech Island's obligation to sell water to Valley.

Moreover, the interpretation proffered by Beech Island and adopted by the majority is completely inconsistent with the purpose of a public service district. The very purpose of the creation of a public service district is to establish a territory of operation. The object is to create a monopoly to ensure the economic feasibility of providing service, irrespective of the density of population. If Beech Island were not required to sell water in the area in which it had been operating unlawfully, a parallel system of lines would effectively be required. Valley brought this action to preserve its territorial integrity; the settlement agreement contract must be construed in light of this purpose. While the settlement agreement may well make Beech Island unusually dependent on Valley as a customer, it must be remembered that Beech Island encroached upon Valley's territory, and had no right to serve customers within that territory. However, as interpreted by the trial court, the settlement agreement allows Beech Island to provide service on a limited scale as Valley's agent, and strikes a reasonable balance between the competing interests.

Accordingly, I would affirm the decision of the trial court in its entirely.