OPINION
{¶ 1} This appeal arises from the Jefferson County Court of Common Pleas' February 7, 2003, Order overruling Appellant Theresa Besece's motion to enforce the settlement agreement and ordering the parties to arbitrate the dispute. Based on the following analysis, the trial court's order is hereby affirmed.
 {¶ 2} Appellant filed a complaint on November 6, 1992, seeking personal injury damages as a result of her husband's asbestos exposure, as well as her loss of consortium. Appellant originally named 26 defendants as potential producers or distributors of the asbestos products and materials that her husband was exposed to while an employee at Norfolk Western Railway Co. for more than forty years. Appellant's husband, Lawrence Besece, was also originally named as a plaintiff, but apparently died while this case was pending.
 {¶ 3} On June 11, 2000, Appellant reached a settlement with The Center for Claims Resolution ("CCR"), a non-party.[1]
(Plaintiff's Motion to Enforce Pre-Trial Settlement Against CertainTeed ["Motion to Enforce"], Exhibit B.) CCR is a non-profit organization created to handle asbestos litigation on behalf of its member companies. All member companies agreed that CCR would act as their agent in litigating and negotiating asbestos-related claims pursuant to a written agreement entitled Producer Agreement Concerning Center for Claims Resolution ("Producer Agreement"). (Motion to Enforce, Exhibit C.)
 {¶ 4} CertainTeed Corporation ("CertainTeed") and Armstrong World Industries ("Armstrong") are CCR member companies. (Cross-Motion, Exhibit A, Fitzpatrick Affidavit.) The record reflects that Appellant was to receive settlement sums only from these two member companies via CCR. In so doing, Appellant apparently had to agree to release all CCR member companies. (Motion to Enforce, Exhibit D.) Appellant executed the Release prepared by CCR on October 31, 2000.
 {¶ 5} The dispute arose in the instant matter when Appellant received only a partial settlement payment from CCR in February 2001. CCR had received CertainTeed's "share" of Appellant's settlement, but Armstrong did not make its requisite payment to CCR. (Fitzpatrick Affidavit.) Armstrong filed bankruptcy on December 6, 2000. (Fitzpatrick Affidavit.)
 {¶ 6} The partial payment was issued to Appellant with a letter from CCR setting forth Appellant's "options" pursuant to the CCR Settlement Agreement relative to the non-paying CCR company. The letter provided that Appellant could declare the Settlement Agreement null and void; seek to enforce the Settlement Agreement against the non-paying companies; or pursue the original, "bodily injury claims against the defaulting [non-paying] member companies alone." (Cross-Motion, Exhibit E.)
 {¶ 7} Thereafter, Appellant filed her motion to enforce the Settlement Agreement on October 24, 2002, pursuant to Civ.R. 15(E). She chose none of the options given in the CCR letter. Instead, Appellant asked the trial court to hold CertainTeed, the sole paying CCR member, jointly and severally liable for Armstrong's share of the settlement amount pursuant to the CCR Settlement Agreement.
 {¶ 8} In response, CertainTeed asked the trial court to compel arbitration and to stay the case. CertainTeed asserted that arbitration was required under the Settlement Agreement and pursuant to the Federal Arbitration Act.
 {¶ 9} Appellant's sole assignment of error alleges:
 {¶ 10} "The Court of Common Pleas Abused Its Discretion in Denying Appellant Theresa Besece's Motion to Enforce Pre-Trial Settlement in Favor of CertainTeed's Motion to Stay Dispute and Compel Arbitration, Where Appellant's Motion to Enforce Was Brought Pursuant to the Specific Remedies Provided For in the Parties [sic] Settlement Agreement."
 {¶ 11} Appellant asserts that this Court's standard of review is abuse of discretion. However, because this issue involves a question of contract law, the question before this Court is, "whether the trial court erred as a matter of law in dismissing the motion to enforce the settlement agreement." ContinentalWest Condominium Unit Owners Assn. v. Ferguson, Inc. (1996),74 Ohio St.3d 501, 502, 660 N.E.2d 431.
 {¶ 12} "It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party. * * *" (Citations omitted.) Id. at 502.
 {¶ 13} The instant issue concerns the trial court's conclusion that the arbitration clause in the parties' Settlement Agreement governs the dispute herein. Because we are reviewing a matter concerning application of contract laws, we review this matter de novo, without deferring to the trial court.
 {¶ 14} Initially it should be noted that the parties have addressed and recognized a potential discrepancy in the governing law. CertainTeed asserts that pursuant to paragraph 19 of the Settlement Agreement, South Carolina law governs. The Settlement Agreement provides: "19. Any disputes concerning the interpretation or performance under this Agreement shall be resolved in accordance with the laws of the State of South Carolina." (Motion to Enforce, Exhibit B, p. 7.)
 {¶ 15} Appellant, however, contends that pursuant to the Release, Ohio law governs. The Release provides:
 {¶ 16} "* * * the Releasor [Appellant] in forming this Release has relied upon existing Ohio law and agrees that Ohio law controls this agreement including the current provisions of Ohio Revised Code, section 2307.32 (F)." (Motion to Enforce, Exhibit D, p. 1.)
 {¶ 17} The trial court did not address this issue. Both parties have admitted at oral argument that the laws of South Carolina and Ohio on this matter are virtually identical. For purposes of clarity, however, we must resolve this issue.
 {¶ 18} A close look at both of these documents compels us to conclude that, as to the precise question before us, South Carolina law must be followed. The documents, at first blush, appear to be in conflict. However, careful reading of the Release leads us to conclude that Ohio law was to be followed only in interpreting the Release. The above-cited language appears to state that "this agreement" is in reference to the Release, itself. Nowhere does the language of the choice of law paragraph refer to the underlying Settlement Agreement.
 {¶ 19} Whereas the Release provides that Ohio law governs that agreement, the Settlement Agreement clearly provides that South Carolina law governs disputes arising specifically from the Settlement Agreement. Further, the arbitration clause is found within the parties' Settlement Agreement and is not referenced in the Release. As such, we must conclude that South Carolina law governs the dispute herein. Again we must note that the parties essentially agreed at oral argument that there are no significant differences between Ohio and South Carolina law relative to the issues on appeal.
 {¶ 20} Ohio law provides that courts generally should indulge a strong presumption in favor of arbitration. Ambulatory CareReview Services, A.K.A. ACRS, Inc., v. Blue Cross Blue ShieldOf Minnesota (1998), 131 Ohio App.3d 450, 455, 722 N.E.2d 1040. However, an arbitration clause should not be expanded beyond its intent. Stillings v. Franklin Twp. Bd. of Trustees (1994),97 Ohio App.3d 504, 508, 646 N.E.2d 1184.
 {¶ 21} In Ohio, a court will enforce an arbitration clause unless it is, "firmly convinced that the clause is inapplicable to the dispute or issue in question." Ervin v. Am. FundingCorp. (1993), 89 Ohio App.3d 519, 521, 625 N.E.2d 635. Further, any doubts concerning the applicability of an arbitration clause should be resolved in favor of arbitration. Independence Bank v.Mechanical (1988), 49 Ohio App.3d 17, 550 N.E.2d 198, syllabus.
 {¶ 22} By comparison, South Carolina law provides that the interpretation of a settlement agreement, like any other contract, is a question of law. Valley Public Service Authorityv. Beech Island Rural Community Water Dist. (Ct.App. 1995),319 S.C. 488, 493, 462 S.E.2d 296. For questions of law, a reviewing court's scope is limited to correcting errors of law. State AutoProperty Cas. Ins. Co. v. Gibbs (1994), 314 S.C. 345,444 S.E.2d 504.
 {¶ 23} Further, the South Carolina Supreme Court has held that the arbitrability of a dispute is a question of law.Zabinski v. Bright Acres Assoc. (2001), 346 S.C. 580, 596,553 S.E.2d 110. In interpreting whether an arbitration clause governs a particular dispute, courts should not, "rule on the potential merits of the underlying claims." Id. citing ATT Techs. v.Communications Workers of America (1986), 475 U.S. 643,106 S.Ct. 1415.
 {¶ 24} Zabinski stressed that both the laws of South Carolina and the federal law favor arbitration. Zabinski,346 S.C. 580, 596, 553 S.E.2d 110. In assessing the arbitrability of a dispute, courts must determine, "whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, * * * [and] [a]ny doubts * * * should be resolved in favor of arbitration." Id. at 597, citing Towlesv. United Healthcare Corp. (Ct.App. 1999), 338 S.C. 29,524 S.E.2d 839.
 {¶ 25} A court's principal concern should be to uphold the parties' intentions, and if the contract language is unambiguous, then, "it alone determines the contract's force and effect."Valley Public Service Authority, 319 S.C. 488, 493,462 S.E.2d 296, citing Parker v. Byrd (1992), 309 S.C. 189, 191,420 S.E.2d 850.
 {¶ 26} Appellant argues that arbitration is unnecessary since the contract, when read as a whole, provides for joint and several liability between the member companies, i.e. CertainTeed and Armstrong. Appellant refers to language in the Producer Agreement in support of this assertion. The Producer Agreement is the agreement between the participating asbestos producers, including CertainTeed and Armstrong. Appellant asserts that the Producer Agreement is incorporated by reference in the parties' Settlement Agreement.
 {¶ 27} Appellant claims that the Producer Agreement provides that a member company shall assume the shares of a terminated member company. The alleged applicable language in the Producer Agreement arguably defining Armstrong as a "terminated" participating producer provides:
 {¶ 28} "III Membership in center
 {¶ 29} "* * *
 {¶ 30} "2. The membership of any Participating Producer in the Center may be terminated only in the following manner:
 {¶ 31} "* * *
 {¶ 32} "b) the membership of any Participating Producer shall terminate upon the filing by such Participating Producer for bankruptcy protection or other protection against creditors under any state or federal law; * * *" (Cross-Motion, Exhibit B, Producer Agreement, p. 6.)
 {¶ 33} Thereafter, Appellant directs this Court's attention to Attachment A to the Producer Agreement, which provides in part:
 {¶ 34} "F. New Entrants and Withdrawals
 {¶ 35} "* * * In the event that a Participating Producer shall * * * have its membership terminated pursuant to Paragraph 3 of Section III, the corresponding shares of the other Participating Producers shall be increased appropriately to pick up the shares of the withdrawing or terminating Participating Producer." (Cross-Motion, Exhibit B, Producer Agreement, Attachment A, p. 26.)
 {¶ 36} Based on the foregoing, Appellant alleges the Producer Agreement clearly provides that CertainTeed must pay Armstrong's share and that any dispute to the contrary must be arbitrated between the participating companies, and not Appellant.
 {¶ 37} In support of this argument, Appellant relies on the Eighth District Court of Appeals' analysis in In re All Kelly Ferraro Asbestos Cases ("Kelly Ferraro"), 153 Ohio App.3d 458,794 N.E.2d 729, 2003-Ohio-3936, certiorari granted100 Ohio St.3d 1544, 800 N.E.2d 750. The Kelly Ferraro plaintiffs sought to hold the paying and non-defaulting CCR members liable for the total settlement amounts, while those members, by and through CCR, asserted that it was the plaintiffs' responsibility, via the Settlement Agreement, to pursue the non-compliant CCR members for the unpaid portions. Id.
 {¶ 38} In holding that the non-defaulting CCR members were jointly and severally liable for the total settlement, the court in Kelly Ferraro noted that the CCR members' individual shares or portion of the total settlement amount were not set forth in the plaintiffs' settlement agreement. The court observed that the plaintiffs would therefore be unable to, "prove in a tort or contract action the amount of liability owed by any particular CCR member company without joinder of the other CCR members." Id. at ¶ 52. The Eighth District stressed that the settlement agreement could have easily employed the word "several" to define the members' liability. Id. at ¶ 56.
 {¶ 39} Appellant argues that Kelly Ferraro is on point. She claims that the trial court, following Kelly Ferraro,
should have ruled on the merits and should not have sent the matter to arbitration. Appellant argues that there was an arbitration provision similarly before the court in Kelly Ferraro and that court refused to send the matter to an arbitrator. Thus, Appellant concludes, arbitration in the matter before us is improper and the trial court should have maintained jurisdiction and interpreted the language of the several agreements in the same manner as the Eighth District Court of Appeals.
 {¶ 40} The Kelly Ferraro opinion reflects that there was an assignment of error on appeal relative to an arbitration provision. However, the arbitration provision addressed in Kelly Ferraro, supra, was contained in the Producer Agreement. Thus, by its own terms it governs disputes only between the signatory producers. Id. at ¶ 16. The settlement agreement in dispute inKelly Ferraro was executed in July of 1999 by the asbestos plaintiffs, and based on information which can be gleaned in theKelly Ferraro opinion, there was apparently no arbitration clause contained within the settlement agreement. Id.
 {¶ 41} In the instant matter, there is an arbitration clause set forth in the applicable CCR Producer Agreement, but we would agree that specific arbitration clause governs disputes between the producers as in Kelly Ferraro, supra. (Cross-Motion, Exhibit B, ¶ E.) The arbitration clause at issue here and enforced by the trial court is set forth in the parties' Settlement Agreement executed on June 11, 2000. (Cross-Motion, Exhibit C, ¶ 7.) While the arbitration provision at issue inKelly Ferraro was specifically applicable only to the asbestos producers, and did not involve the plaintiffs, the arbitration clause which formed the basis of the trial court's decision in the present matter is found within the Settlement Agreement entered into between Appellant and Appellees. This difference is crucial to our determination. Because of this difference, Kelly Ferraro is not relevant to the question before us.
 {¶ 42} While Appellant relies on language contained within the Producer Agreement as the basis of her argument, CertainTeed directs this Court's attention to the language in the CCR Settlement Agreement in support of its assertion that it is only responsible for its divisible share of the settlement amount. The Settlement Agreement provides in part that: "7. * * * each CCR member company shall be liable under this Settlement Agreement only for its individual share of such payments as determined under the Producer Agreement. * * *" (Cross-Motion, Exhibit C, ¶ 7.)
 {¶ 43} Thereafter the Settlement Agreement provides options for "Plaintiff Counsel" in the event that a CCR member company fails to make a payment, which is defined by the Settlement Agreement as a "default." (Cross-Motion, Exhibit C, ¶ 7.) Armstrong's "default" as opposed to its "termination" from CCR may be a determining issue on the merits. However, we believe the trial court was correct in refusing to reach the merits of this case.
 {¶ 44} The trial court held, and CertainTeed agrees, that this contract interpretation question should be decided via arbitration as provided in the Settlement Agreement. The Settlement Agreement's arbitration clause provides:
 {¶ 45} "11. It is agreed that the parties will make good faith efforts to resolve any disputes that may arise while carrying out the terms and conditions of this Agreement. If the parties are unable to resolve a dispute, the issue shall be referred to a mutually agreeable arbitrator for binding resolution. If the parties are unable to mutually agree upon an arbitrator, then each party shall select one arbitrator, and the two arbitrators so selected shall select a third arbitrator. All disputes shall then be resolved by a majority vote of the three arbitrators. The decision of the mutually agreeable arbitrator, or of the majority of the three arbitrators, shall be final and binding upon the parties. The costs of the arbitration (including the arbitrator's or arbitrators' fees and expenses) shall be borne equally by the parties (unless otherwise directed by the arbitrator in his or her opinion resolving the matter or by agreement by the parties), and each party shall bear its own attorneys' fees." (Motion to Enforce, Exhibit B, p. 5; Cross-Motion, Exhibit C, ¶ 7.)
 {¶ 46} In reviewing the Settlement Agreement as a whole, it is clear that the dispute in the instant case falls within the general arbitration clause. The dispute concerns the terms and conditions of the Settlement Agreement; specifically, whether a member company is responsible for a non-paying member company's settlement share. Contrary to Appellant's assertions, the terms contained within the Producer Agreement and Settlement Agreement at issue here are not patently clear.
 {¶ 47} In addition, the Fourth District Court of Appeals' decision in Cales v. Armstrong, 4th Dist No. 02CA2851, 2003-Ohio-1776, has recently applied South Carolina law to interpret an arbitration clause in a strikingly similar case.Cales held that an arbitration clause contained within a June of 2000, Settlement Agreement entered into by the parties was enforceable. The court concluded that, "the phrase `any dispute' [taken from the arbitration clause,] * * * means `all' or `every' dispute arising under the Settlement Agreement[,]" and thus includes the parties' differing interpretations as to the payment of the non-paying member company's share. Id. at ¶ 17. Notwithstanding its decision in favor of arbitration, Cales
briefly addressed the underlying merits and recognized the potential for different interpretations of the pertinent contract language. Id.
 {¶ 48} Based on the foregoing, the trial court's decision to order this dispute to arbitration pursuant to paragraph 11 of the Settlement Agreement is hereby affirmed. Because we agree that arbitration is appropriate here, this Court will not reach the merits of the underlying dispute. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] The settlement agreement covered approximately 1,185 railroad worker asbestos claimants, which included Besece. (Fitzpatrick Affidavit; Motion to Enforce, Exhibit B.)