12867

CHARLES v. WEST

(152 S. E., 644)

June, 1926.

*Mr. C. G. Wyche,* for appellant,

*Mr. B. F. Martin,* for respondent,

March 26, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The respondent, a real estate broker, sued the appellant, in the Court of Common Pleas of Greenville County for the sum of $3,800, and interest thereon, alleged to be due as commissions on the sale of a tract of land for the appellant. The trial of the cause before his Honor, T. J. Mauldin, and a jury resulted in a verdict and judgment in favor of the respondent for the amount of the claim of $3,800, without interest.

The claim of the respondent, as alleged in his complaint, which was supported by evidence, briefly stated, was this: On May 20, 1920, respondent and appellant entered into a verbal contract for the sale of 580 acres of land, which was to be sold for a price to net the appellant $116,000, and any amount above that price was to go to the respondent as commissions; that the appellant was to make fair and liberal terms for payment with any customer satisfactory and acceptable to him; that on May 25, 1920, respondent procured one Martin as a purchaser at the price of $120,000, of which sum $4,000 immediately became due to respondent as commissions; that appellant and Martin entered into a written contract for the purchase and sale of the land, whereby Martin was to pay, and did pay, appellant $5,000 cash, and agreed to pay $25,000 on January 5, 1921, at which time appellant was to execute a deed to Martin and accept notes, to be secured by mortgage, for the balance of the purchase price; and that on the day of the contract between appellant and Martin it did not suit appellant to pay, from the $5,000 cash collected by him, the commissions of $4,000 due the respondent, and on that day the appellant signed and delivered to the respondent a certain paper, termed a "due bill," in the following language: "I hereby agree to pay to J. P. Charles the sum of Four Thousand ($4,000.00) Dollars when the sale of 580 acres is completed, which shall not be later than January 5, 1921, at which time the purchaser is to pay me the sum of Twenty-five Thousand ($25,000.00) Dollars."

The respondent further contended that the "due bill" was not a *contract* between the parties, but was simply evidence of an "unwilling extension" of time for payment of the commissions already due him by the appellant, since respondent had performed the terms of the verbal agreement entered into previously between the parties. That on December 7, 1920, the appellant paid on the commissions due the sum of $200. Between May 25, 1920, the date of the con-

tract between Martin and the appellant, and January 5, 1921, appellant accepted a tract of land deeded to him by Martin at the price of $5,000, as part payment of the amount due by Martin to the appellant. Later, Martin was unable to carry out the contract with the appellant, and those two parties made another contract with reference to the land. The respondent contended that he had nothing to do with the making of the new contract, and that the same in no way affected the commissions due him.

The appellant admitted practically the verbal agreement, alleged by the respondent, and the contract to sell the land to Martin upon the terms above mentioned, but he contended that the commissions of $4,000 were not to be paid by him to the respondent until he had received from Martin the sum of $25,000 on the purchase price of the land, which was to be paid not later than January 5, 1921, and that the written instrument, termed by the respondent, and by us hereinafter, as a "due bill," was in fact a written agreement between him and the plaintiff, which took the place of all former verbal agreements; and because of the failure of Martin to pay the $25,000, he was not due the respondent any sum as commissions.

The 21 exceptions of the appellant relate to the refusal of the presiding Judge to grant a motion for nonsuit, a motion for a directed verdict in favor of the appellant, the admission of parol evidence as to the effect of the "due bill," and the charging, and refusal to charge, of certain instructions as to the effect of the "due bill." We do not think it necessary to pass upon the exceptions separately, or to go into any particular detail as to them.

The vital question in the controversy between the parties is this: Did the respondent become entitled to the commissions of $4,000 upon the completion of the sale to Martin, evidenced by the written contract between the appellant and Martin on May 25, 1920, or was the payment of the commissions conditioned upon the payment of the additional

$25,000 by Martin on January 5, 1921? In the consideration of this question, the effect of the "due bill" of May 25, 1920, must be considered.

The trial Judge held that the "due bill" was ambiguous, and, for that reason, he admitted parol evidence on the part of the respondent in explanation thereof. He charged the jury that the "due bill" was ambiguous, and left it to them to determine the effect of that paper in their consideration of the case. In our opinion, the whole case turns upon the rulings made in this regard.

A real estate broker is a special agent employed to find a prospective purchaser and to bring him to the owner of the land, offered for sale, who completes the sale with the purchaser. *Edwards v. Coleman,* 139 S. C., 369, 138 S. E., 42.

"A broker who has been the efficient or procuring cause of a sale consummated by his principal, is entitled to his commissions." (Syllabus) *Cleveland & Williams v. Butler,* 94 S. C., 406, 78 S. E., 81.

In *Goldsmith v. Coxe,* 80 S. C., 341, 61 S. E., 555, 557, a case involving commissions due a broker for the sale of land, Mr. Justice Woods, speaking for the Court, said this: "There are no cases in this State bearing on the questions here presented. But the rule of reason which seems to be supported by practically all the authorities on the subject is that the broker is entitled to his commissions, if, during the continuance of his agency, he is the efficient or procuring cause of the sale, though the actual agreement for the sale is made by the owner without the aid of the broker; and the broker will be regarded the procuring cause if his intervention is the foundation upon which the negotiation resulting in the sale is begun."

There was sufficient evidence in this case to show that the respondent, as a broker, was "during the continuance of his agency, the efficient or procuring cause of the sale, though the actual agreement for the sale was made by the owner." It follows, under the authorities

cited above, that immediately upon the conclusion of the contract of sale between Martin and the appellant, the respondent became due the amount of the commissions, which the appellant had contracted to pay to him, if the contract between the parties was as claimed by the respondent. On the other hand, if the contract made between them was as the appellant alleged, the commissions were not due until Martin had paid the appellant the sum of $25,000.

If the "due bill" had the effect that the respondent contended for, to wit, that it contained an acknowledgment of the amount due him by the appellant and only put off the day of payment, the respondent was still due the $4,000 on January 5, 1921. But if the "due bill" was a *contract* between the parties, and if it was not ambiguous and clearly provided that the appellant was only to pay the commissions upon the receipt of the money from Martin, the appellant was not due the amount of the "due bill," since it is conceded that Martin never paid the full amount he was to pay. The case then turns upon the construction and effect of the "due bill." If it was plain and clear and there was no ambiguity therein, the Circuit Judge committed error in allowing the parol evidence to be introduced regarding the real meaning of the paper, and he also erred in the other respects claimed by the appellant.

The instrument called the "due bill" was not signed by the respondent, and there is no suggestion in the record of any new consideration moving to either of the parties for its execution and delivery. The evidence does not make it plainly apparent that the respondent accepted the paper with the view of substituting it in the place of the verbal agreement formerly made by him with the appellant. If the respondent was already entitled to his commissions upon the completion of the sale, it does not seem reasonable that he would thereafter agree to make the payment of his commissions conditional upon the payment of the additional sum of $25,000 by Martin. The testimony of respondent, and other

witnesses present at the writing of the "due bill," was to the effect that the purpose of the paper was only to extend the time of payment of the commissions, as the appellant stated he wished to use the first $5,000 cash payment for other purposes.

The instrument itself does not seem clear to us. While the sale of the land may not have been entirely "completed" on May 25, 1920, when the "due bill" was delivered, the respondent had completed all that he had agreed to do, namely, procured a satisfactory customer, and the appellant and that customer had agreed upon the terms of sale, which evidently were satisfactory to the appellant. What was the meaning of the words, "when the sale is completed"? Did that refer to the time when the appellant was to make and deliver the deed to Martin? Or did it refer to the payment to the appellant by Martin of $25,000 as something necessary to be done to complete the sale? It may have been one or the other of these things, or it may have been even something else. We are unable to say.

The paper did not say that the $4,000 were to be paid out of the $25,000 to be received by the appellant from Martin. If it was the intention of the paper to say that the respondent was never to be paid anything unless the appellant received the $25,000, the instrument failed to state that clearly.

The evidence shows that the appellant himself dictated the writing of the paper to a third person and signed it and delivered it to the respondent. Since he prepared the instrument, if there is doubt about its construction, that doubt must be resolved against him and in favor of the party to whom it was delivered and who acted thereupon.

In our opinion, Judge Mauldin was right in holding that the "due bill" was ambiguous. That being true, under numerous decisions and authorities not necessary to be cited, he was correct in allowing parol evidence to explain the paper and the ambiguities contained therein. It follows, also, that there was no error in refusing the mo-

tions for a nonsuit and for a directed verdict. The charge of the Court, too, in which the jury was instructed to consider the "due bill," and the evidence as to its real meaning, in reaching their verdict, was correct.

After all, the verdict of the twelve men, who tried the case, in favor of the respondent, shows that it was not clear to them that the respondent had accepted a paper which bound him not to have his commissions until the appellant had received from Martin the payment of $25,000. Not only the Judge, but the jury, thought the paper was ambiguous; and we are forced to that same conclusion.

All the exceptions have been duly considered and are overruled, and the judgment of this Court is that the judgment below be affirmed.

Messrs. Justices Cothran, Stabler and Carter concur.

Mr. Chief Justice Watts dissents.