683 S.E.2d 814

**SPRINGS AND DAVENPORT, INC. d/b/a
H.B. Springs, Co., Respondent,**

v.

**AAG, INC. and John Mancino, Individually, Defendants,**

**Of whom AAG, Inc. is the Appellant.**

**No. 4588.**

Court of Appeals of South Carolina.

Heard May 13, 2009.

Decided July 13, 2009.

Rehearing Denied Oct. 22, 2009.

---

David B. Wheeler and Phyllis W. Ewing, of Charleston, for Appellant.

Robert C. Calamari and Michael Anzelmo, of Myrtle Beach, for Respondent.

SHORT, J.

AAG, Inc. (AAG) appeals from the master-in-equity's order awarding Springs & Davenport, Inc., d/b/a H.B. Springs, Co., (Springs) $75,000 in commissions for the sale of property,

arguing the master erred in finding: (1) the commission agreement was not a modification of the original listing contract; (2) the commission agreement did not create a condition precedent to payment of the commission; (3) Springs's interest in the property did not terminate with the foreclosure sale; and (4) the sale of the property to Clark Homes was not the result of intervening events or any of Springs's actions. We affirm.

## FACTS

AAG[1] owned property in Myrtle Beach and entered into an exclusive contract with Springs, an Horry County real estate brokerage company,[2] to sell the land for $1.2 million, or for another price only if agreed to by AAG. The contract, signed on July 23, 1999, provided Springs would receive a commission of ten percent of the gross sales price of the property. That same month, Springs found a buyer for the land, and on August 3, 1999, AAG sold the property to Bill Clark Homes (Clark) for $1.2 million. On November 16, 1999, AAG and Clark signed a contract addendum, reducing the sale price to $1.17 million. Clark financed the property, paying AAG $345,000 at closing and financing the remaining $800,000 pursuant to a promissory note.[3] The promissory note was signed on January 4, 2000, and the mortgage was recorded on January 10, 2000. In a January 6, 2000 letter from AAG to Springs, an agreement was entered into concerning how the commission was to be paid to Springs. The parties agreed that Springs would receive $37,000 in commission at closing and "[ten percent] of all principal payments made by [Clark] to [AAG]," pursuant to the purchase money mortgage promissory note; however, Springs's commission was not to exceed a total of $117,000.

---

1. John Mancino was a principal of AAG.

2. Van Davenport was a principal of Springs.

3. The $800,000 promissory note was secured by a purchase money mortgage to AAG and was to be paid in two installments of $400,000 each. The first installment was due on or before January 4, 2001, and the second installment was due on or before January 4, 2002.

Clark defaulted on the first $400,000 payment due under the note, and AAG foreclosed on the property. In the foreclosure action, the master's order granted AAG a judgment against Clark in the amount of $907,061.48 and ordered the property to be sold at a public auction. AAG re-purchased the property subject to the note at the foreclosure sale for $422,100 and filed a "Satisfaction of Mortgage by Foreclosure" in the Horry County R.M.C. office stating the mortgage was "released, canceled and satisfied." After the sale of the property, the judgment was considered partially satisfied with a balance of $484,961.48 plus interest still owed to AAG. To satisfy the remaining balance, AAG filed a second action against Clark [4] for land AAG sold to Clark that was not subject to the foreclosed mortgage. The parties settled the action. In exchange for $750,000, AAG executed a limited warranty deed transferring AAG's interest in all the property to Clark and released Clark from the deficiency judgment. The limited warranty deed was filed with the Horry County Clerk of Court and conveyed any interest AAG had in the property it purchased at the foreclosure sale and the property subject to the second action. AAG did not pay Springs any additional commission.

Springs filed a complaint against AAG and John Mancino, a principal of AAG, seeking the remaining commission for selling the property. The case was referred to the master by consent order. The amended complaint listed five causes of action; however, the parties agreed to waive all claims except Springs's claim for its real estate commission from AAG. All counterclaims and Mancino were dismissed by agreement. For the purposes of the action, Springs and AAG agreed to use $75,000 as the figure for the commission in dispute. The master entered judgment against AAG in the amount of $124,996, which was comprised of $75,000 in commission, $15,000 in attorneys' fees, and $34,996 in prejudgment interest.[5] This appeal followed.

---

**4.** The action was against BHHL Builders, LLC and Bill Clark Homes because Bill Clark had deeded the land to BHHL, another company he partially owned.

**5.** AAG did not appeal the award of attorneys' fees or prejudgment interest.

## STANDARD OF REVIEW

"An action for a broker's commission is an action at law." *Chambers v. Pingree,* 351 S.C. 442, 449, 570 S.E.2d 528, 531 (Ct.App.2002). In a law action tried before a master, this court's review is limited to correcting errors of law, and we are required to uphold the master's findings of fact unless there is no evidence to support it. *Id.; Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "Where mixed questions of fact and law are presented, the legal conclusions to be drawn are not entitled to the same deference." *Chambers,* 351 S.C. at 449, 570 S.E.2d at 531.

## LAW/ANALYSIS

 AAG argues the commission agreement was a modification of the original listing contract and created a condition precedent to payment of the commission.[6] We disagree.

 Generally, a broker earns his commission when "he procures a purchaser who is accepted by the owner of the property and with whom the latter, uninfluenced by any representation or fraud on the part of the broker, enters into a valid and enforceable contract." *Thomas–McCain, Inc. v. Siter,* 268 S.C. 193, 196, 232 S.E.2d 728, 729 (1977). Further, a broker's right to compensation "will not be defeated by the failure or refusal of the purchaser to consummate the contract." *Id.* However, the general rule may be modified by agreement:

> It is equally well settled that the broker and owner "may make such a contract for the broker's services as is agreeable to them, and may make the payment of the broker's commission dependent upon the full performance of the contract of purchase or sale, or postpone the payment of the commission, or make the broker's right to the commission contingent upon the happening of future events."

*Hamrick v. Cooper River Lumber Co.,* 223 S.C. 119, 124, 74 S.E.2d 575, 577 (1953) (quoting *Brown Paper Mill Co. v. Irvin,* 146 F.2d 232, 234 (8th Cir.1944)). " 'Where the obligation of the principal to pay commissions depends upon the perform-

---

6. This issue addresses Appellant's first and second issue.

ance of conditions precedent, the broker takes the risk of nonperformance on the part of the customer.'" *Id.* (quoting *Segal Brokerage Co., Inc. v. Lloyd L. Hughes, Inc.,* 96 F.2d 208, 210 (9th Cir.1938)).

A condition precedent is "any fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance by the promisor can arise." *Ballenger Corp. v. City of Columbia,* 286 S.C. 1, 5, 331 S.E.2d 365, 368 (Ct.App.1985). "Words. and phrases such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' and 'subject to' frequently are used to indicate that performance expressly has been made conditional." *Cobb v. Gross,* 291 S.C. 550, 552, 354 S.E.2d 573, 574 (Ct.App.1987). "Whether a stipulation in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ." *Id.* If there is doubt about the construction of a writing, the doubt must be resolved against the drafter and in favor of the party to whom it was delivered. *Charles v. West,* 155 S.C. 488, 494, 152 S.E. 644, 646 (1930).

In this case, the exclusive right to sell contract signed between Springs and AAG in July 1999 stated Springs's commission was due upon any of the following events:

(1) The sale of the property during the authorization period or as a result of a contract secured during the authorization period;

(2) The signing by [AAG] of a valid contract to sell the property but [AAG] fails or refuses to complete the sale as agreed; or

(3) The presentation to [AAG] of a valid and bona fide written offer to purchase the property which complies with the terms and conditions specified herein.

The broker fee shall be earned, due and payable when an Agreement to purchase, option, exchange, lease or trade is signed by [AAG].

The January 6, 2000 letter, sent five months after the contract between AAG and Clark was signed, provided that Springs "shall be paid as follows: 1. $37,000.00 to be paid at closing. 2. 10% of all principal payments made by [Clark] to [AAG] under the balance purchase money promissory note."

AAG and Clark signed the contract for the sale of property on August 3, 1999; thus, according to the exclusive right to sell contract, Springs's commission was due when the contract was signed, regardless of whether Clark completed the purchase of the property. However, AAG argued the January 6, 2000 letter created a condition precedent, and Springs's commission was contingent on Clark making his payments under the promissory note. Thus, AAG argued because Clark failed to make his first payment, the funds from which the commission was to be paid did not exist, and the condition precedent had not been met. Springs argued the letter did not create a condition precedent because there was no language in the letter to evidence a meeting of the minds by the parties that Springs would not be due a commission until the payments were made under the promissory note. The letter did not specifically state Springs would not be paid until or unless Clark makes his payments under the promissory note.

We find this case is similar to *Charles v. West,* 155 S.C. 488, 491, 152 S.E. 644, 644 (1930). In *Charles,* at the closing, the seller gave the broker a "due bill" for payment at a later time instead of cash. Then, because of problems with the transaction, the seller attempted to not pay the broker pursuant to the due bill. *Charles,* 155 S.C. at 491, 152 S.E. at 644–45. The court found the due bill did not state clearly whether payment would not be made unless and until the occurrence of a future event, and because the writing was drafted by the seller, any doubt of its construction must be resolved against him and in favor of the broker. *Id.* at 494, 152 S.E. at 646. The court also determined the broker did not sign the "due bill" and there was no evidence of any new consideration moving to either of the parties for its execution and delivery because when the bill was given to him, the broker had already completed what he had agreed to do, which was to procure a satisfactory customer. *Id.* Here, although Springs did sign the January 6, 2000 letter, when it did so, it had already done what the contract required it to do to receive its commission because AAG and Clark had signed a sales contract. *See Thomas–McCain,* 268 S.C. at 199, 232 S.E.2d at 730 (concluding that pursuant to the contract, the broker had earned the commission, payment of the commission was due even in the event of default, and there were no further

obligations to be performed by the broker). If AAG had wanted to ensure it only owed Springs a commission if and when Clark made its payments, AAG could have used language stating no commission was due unless payment was made by Clark. Thus, construing the letter against the drafter, AAG, we find the letter did not create a condition precedent, but merely extended the time AAG had to pay Springs its commission.

Therefore, the master properly determined the January 6, 2000 letter did not create a condition precedent extinguishing AAG's obligation to pay Springs its commission because the letter did not specifically state Springs was not entitled to a commission if Clark failed to pay. Additionally, when the January 6, 2000 letter was signed, Springs had already performed its entire obligation under the broker agreement and was due its full commission. Because this issue is dispositive of the case, we do not reach the merits of AAG's remaining issues. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).

## CONCLUSION

Accordingly, the master's order is

**AFFIRMED.**

